Brenton R. Babcock (CA Bar No. 162120)
Tyler R. Train (CA Bar No. 318998)
WOMBLE BOND DICKINSON (US) LLP
400 Spectrum Center Drive, Suite 1700
Irvine, CA 92618
Telephone: 714-557-3800
Facsimile: 714-557-3347
Email: brent.babcock@wbd-us.com
        tyler.train@wbd-us.com

Attorneys for Defendants
Accu-Tac, LLC, a California
limited liability company, and
Luis Felipe Salazar, an individual

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| B-5, INC., a Kansas corporation; and B & T INDUSTRIES, LLC, a Kansas limited liability company, | Case No.  5:20-cv-00532-PSG-KK |
| Plaintiffs/Counterclaim Defendants, | Honorable Philip S. Gutierrez |
| v. | **DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF** |
| ACCU-TAC, LLC, a California limited liability company; LUIS FELIPE SALAZAR, an individual; and DOES 1 through 50, inclusive, | |
| Defendants/Counterclaim Plaintiffs. | |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARDS ........................................................................................ 2

    A.  General Principles Governing Claim Construction ................................... 2

    B.  Means-Plus-Function Claiming Under Pre-AIA 35 U.S.C. § 112, ¶ 6 ................................................................................................................. 3

III.  ARGUMENT ....................................................................................................... 4

    A.  The Asserted Patents ................................................................................. 4

    B.  Prosecution History .................................................................................. 6

    C.  Related Patents .......................................................................................... 7

    D.  Disputed Claim Terms .............................................................................. 8

        1.  Terms Invoking Section 112/6 ........................................................ 8

            a.  "pivot support" ...................................................................... 8

                i.  Section 112/6 Governs the Term *Pivot Support* ........ 8

                ii.  The Corresponding Structure Includes the Disclosed Ball and Socket Joint ................................ 12

            b.  "corresponding structure" ................................................... 15

                i.  Section 112/6 Governs the Term *Corresponding Structure* ............................................. 15

                ii.  The Corresponding Structure Includes the Disclosed Position Feature 110 ............................... 17

        2.  Terms Not Subject to Section 112/6 ............................................. 19

            a.  "stowable" ............................................................................ 19

            b.  "plurality of recesses" ......................................................... 22

IV.  CONCLUSION .................................................................................................. 25

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

# TABLE OF AUTHORITIES

**Federal Statutes**

35 United States Code § 112.................................................................................passim

**Federal Cases**

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016) ............................................................................................................. 9, 16

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) ............................................................................................................. 4, 16

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) .................................................................................................................. 14

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) ..................... 21

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070 (Fed. Cir. 2019) ................................................................................................................. 2, 8

*Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) ..................... 4

*Indus. Access Inc. v. Corelogic, Inc.*, No. SACV11473JLSFFMX, 2014 WL 12775082, at *7 (C.D. Cal. July 8, 2014).......................................................... 11

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ..................... 14

*Massachusetts Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ................................................................................ 9

*Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) ............................ 4

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).................. 2, 3

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) .................................................................................................................. 23

*Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002)................................ 7

*Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353-54 (Fed. Cir. 2000) ..................... 6

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

*Sparton Corp. v. U.S.*, 68 Fed. Cl. 34, 47 (Fed. Cl. 2005) ...........................................11

*Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016)...2, 3

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ...............2

*Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000) ...........................................3

*Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008)....................4

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)....................3

**Other Authorities**

*Webster's Third New International Dictionary* (1961)....................................................4

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

Pursuant to Rule 4-5 of the N.D. Cal. Patent Local Rules ("P.L.R.") adopted in this case and the Court's Scheduling Order of October 16, 2020 (Dkt. 24), Defendants Accu-Tac, LLC and Luis Felipe Salazar (collectively, "Defendants") submit the following Opening Claim Construction Brief.

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

## I.    INTRODUCTION

Plaintiffs B-5, Inc. and B & T Industries, LLC (collectively, "Plaintiffs") have alleged infringement of U.S. Patent Nos. 8,402,684 ("the '684 Patent") and 8,904,693 ("the '693 Patent") (collectively, the "Asserted Patents"), asserting claims 1-3 and 5 of the '684 Patent and claims 1-3 and 6 of the '693 Patent (collectively, the "Asserted Claims").

At the outset, the Asserted Patents are unclear in a number of respects, for example, having (as Plaintiffs' admit) "awkward [claim] language" (Ex. 2 at 31) and including undefined claim terms that are undisputedly not found in the Asserted Patents' common specification.  Other obscurities include informal, handwritten reference numerals that do not match the numerals in the written description.  Thus, for purposes of this claim construction exercise, Defendants have made their best effort to understand Plaintiffs' Asserted Patents, and supply the Court with as much clarity as possible in this regard.  Conversely, Plaintiffs will no doubt attempt to use the confusion and imprecision that they have created, whether intentional or not, to their advantage by advocating for broad constructions for abstruse claim terms that they newly coined in amendments made after the filing of the Asserted Patents and which lack any specification support in either the Asserted Patents or their predecessor parent patents.  Any such attempt would contravene the Patent Law's fundamental requirement that the specification describe the claimed invention in "full, clear, concise, and exact terms . . . ."  35 U.S.C. § 112.

Defendants do not contend that Plaintiffs are foreclosed from introducing new claim terms—but they may do so only to the extent that the new terms find

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

specification support and do not provide Plaintiffs with broader protection than what they originally disclosed.  To that end, Defendants' proposed constructions actually attempt to spare the Asserted Patents at this stage from potential invalidity challenges later by reconciling the undefined terms with the language from the specification, while providing Plaintiffs with reasonable and fair protection that is commensurate with their disclosure.  That is the fundamental *quid pro quo* of the patent system; providing patent protection in exchange for full public disclosure in the specification. Here, however, adopting Plaintiffs' proposed constructions would unduly broaden their protection and create serious issues regarding the Asserted Patents' validity.

## II.   LEGAL STANDARDS

### A.   General Principles Governing Claim Construction

Claim terms are generally given their ordinary and customary meaning to the person of ordinary skill in the art ("POSITA") at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  The terms are to be read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.* at 1312-13.  The specification is the "single best guide to the meaning of a disputed term" and "is, thus, the primary basis for construing the claims."  *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (internal citations omitted).  The specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."  *Phillips*, 415 F.3d at 1321 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Courts also consider the patent's prosecution history as part of the intrinsic record, and may additionally treat familial patents as intrinsic evidence where "a parent application includes statements involving 'common subject matter' with the terms at issue[.]"  *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070 (Fed. Cir. 2019).  Further, courts may rely on extrinsic evidence such as dictionary definitions if such evidence does not contradict the meaning set forth in the

specification. *Phillips*, 415 F.3d at 1317, 1322-23. Other extrinsic evidence may likewise be relevant, *id.*, but "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Trs. of Columbia Univ.*, 811 F.3d at 1366.

### B.  Means-Plus-Function Claiming Under Pre-AIA 35 U.S.C. § 112, ¶ 6

A claim with a limitation that is expressed in terms of a means plus a function "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6 ("Section 112/6").

A claim limitation is presumed to invoke Section 112/6 when it explicitly uses the terms "means" or "step" and includes functional language, whereas a claim limitation that does not use "means" or "step" will trigger a rebuttable presumption that Section 112/6 does not apply. *See Phillips*, 415 F.3d at 1311. The Federal Circuit has expressly "abandon[ed] characterizing as 'strong' the presumption that a limitation lacking the word 'means' is not subject to § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) ("[W]e will apply the presumption . . . without requiring any heightened evidentiary showing and expressly overrule the characterization of that presumption as 'strong.'").

The appropriate standard for determining whether claim language invokes Section 112/6 is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* Further, "[w]hen a claim lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Section 112/6 may be invoked in the absence of "means for" language, for example, if the claim limitation uses a generic placeholder (*i.e.*, a "nonce word") that is "simply a substitute for the term 'means for'" and would leave a POSITA with "no recourse but to turn to the []

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

specification to derive a structural connotation for the generically claimed" term. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008); *see also Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) (defining "nonce word" as "a word . . . coined and used apparently to suit one particular occasion . . . but not adopted into use generally" (quoting *Webster's Third New International Dictionary* (1961)) (omissions in original)).

Once a court has determined that a claim term invokes Section 112/6, "[c]laim construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs that function." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (citations omitted). "A structure disclosed in the specification qualifies as a 'corresponding structure' if the specification or the prosecution history 'clearly links or associates that structure to the function recited in the claim.'" *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012). The claim is thus construed to encompass the corresponding structure that performs the recited function, and equivalent structures. *Id.* at 1318.

## III.  **ARGUMENT**

### A.  **The Asserted Patents**

The Asserted Patents are titled "Bipod Firearm Support" and are directed to "a bipod support for supporting the forward end of a firearm." '684 Patent at 1:17-18.[1] Independent claim 1 of the Asserted Patents recites (with the sole distinction between the '684 Patent and '693 Patent bracketed in red and blue, respectively):

> A bipod weapon support comprising:
> a connector having a first portion mountable to the weapon and a second portion on which each of two legs are attached on opposing sides thereof, respectively;
> the connector including a pivot support between the first and second portions permitting relative movement there between [and along vertical and longitudinal axes] [at least about a generally longitudinal axis]; and,

---

[1] The '684 Patent and the '693 Patent have substantively identical disclosures.

each leg is independently mounted to and movable on the opposing sides of
the second portion by a leg mount assembly including a pivot connection
that is biased in place, each of the opposing sides having a plurality of
recesses arranged there about, each leg mount assembly further including
a corresponding structure that can mate with and be releasably secured
within one of the plurality of recesses so that when the structure is moved
relative to a biased condition the leg can be moved around the pivot
connection and the corresponding structure can be positioned in one of
the plurality of recesses so as to permit each leg to be independently
stowable in a rearward manner adjacent the weapon, stowable in a
forward manner adjacent the weapon, and adjustably locked in any one
of a plurality of positions there between.

As shown in exemplary Figures 6, 6A, and 6C, annotated below,[2] the disclosed
bipod has a **clamp portion 12**, a **pivot body 60**, and two **leg assemblies 100** attached
on opposing sides of **pivot body 60**.



FIG. 6

FIG. 6A

FIG. 6C

The bipod also has a ball and socket joint between **clamp portion 12** and **pivot
body 60**, where "**clamp portion 12** presents a projecting **ball portion 30**" and "**pivot
body 60** includes a **socket member 64** for receiving **ball portion 30**." '684 Patent at
3:41-46.  Each opposing side of **pivot body 60** "includes a **recess pattern 92A** which
further includes a **center portion 92A1** and **three radiating position channels 92B1,**

---

[2] All colored annotations have been added for ease of reference.

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

**9[2]B2, 9[2]B3, and 9[2]B4** which communicate with **center portion 92A1**". '684 Patent at 5:19-22.  And each leg assembly 100 has a head portion with a **position feature 110**, "which is shaped to be received by any one of **position channels 92B1, 9[2]B2, 9[2]B3, and 9[2]B4**". '684 Patent at 5:34-35.

### B.  Prosecution History

As originally filed in the application that became the '684 Patent, original claim 1 naturally employed the language from the specification, reciting "a clamp portion," "a pivot body," "a pattern of at least three position channels," and "a position feature." Ex. 1 at 103-104.  But in a subsequent Preliminary Amendment dated April 4, 2012, Plaintiffs replaced original claims 1-3 with new claims (which later became issued claims 1-3) that stripped many of the specification's terms in lieu of newly coined, undefined terms, such as "connector," "first portion," "second portion," "pivot support," and "stowable," *see id.* at 64 (Plaintiffs also added the undefined "plurality of recesses" through their next amendment dated November 2, 2012, *see id.* at 24). Although Plaintiffs substituted brand new terminology through these amendments, the proper construction of these terms still cannot be broader than the disclosure and the terminology originally set forth in the specification, which is essential if the Asserted Patents are to maintain their validity.  *See Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353-54 (Fed. Cir. 2000) (interpreting "the claim at issue to cover no more than what the specification supported at the time of filing" where a claim amendment "substitute[d] terminology" that was not in the original specification because "[t]o grant broader coverage would reward [the inventor] for inventions he did not make.").

During prosecution of the '684 Patent, Plaintiffs faced an obviousness rejection over U.S. Patent No. 5,711,103 to Keng ("Keng") in view of U.S. Patent No. 2,420,267 to Sefried ("Sefried") and U.S. Patent No. 2,489,283 to Garand ("Garand"). Ex. 1 at 41-44; Exs. 8-10.  In their Response dated November 2, 2012, Plaintiffs distinguished these references as not teaching various claimed features such as "each of the opposing sides having a plurality of recesses arranged there about" and "the

corresponding structure can be positioned in one of the plurality of recesses so as to permit each leg to be independently stowable in a rearward manner adjacent the weapon, stowable in a forward manner adjacent the weapon, and adjustably locked in any one of a plurality of positions there between." *Id.* at 31. Because Plaintiffs expressly distinguished Keng, Sefried, and Garand based on certain claimed structural features, the claim terms for those features cannot now be construed to encompass Keng, Sefried, or Garand. *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations because the public has a right to rely on such definitive statements made during prosecution.") (internal quotations omitted).

The application for the '693 Patent was filed with almost identical claims as those of the '684 Patent, with the lone exception being the replacement of "and along vertical and longitudinal axes" with "and along at least a generally longitudinal axis." Ex. 2 at 131. The only rejection throughout the prosecution of the '693 patent was a non-statutory double patenting rejection in view of the '684 Patent, which Plaintiffs overcame by highlighting the removal of "vertical" and amending the claim language "to eliminate awkward language in claim 1." *See id.* at 31. As Defendants will argue later in this case at the appropriated stage, this "awkward language" remains in the '684 Patent and serves as a basis for invalidity of that patent.

### C.  **Related Patents**

The Asserted Patents claim priority to U.S. Patent No. 7,614,174 ("the '174 Patent") and U.S. Patent No. 7,793,454 ("the '454 Patent") (collectively, the "Parent Patents"). Whereas many claim terms in the Asserted Patents represent a departure from the terminology in the specification (*e.g.*, "first portion", "second portion", "pivot support", "plurality of recesses", "corresponding structure", and "stowable"), the claims of the Parent Patents remain faithful to the specification, reciting the expressly disclosed versions of these terms (*e.g.*, "clamp portion", "pivot body", "ball portion", "socket member", "recess pattern", "position channels", "position feature",

and "locked"). *See, e.g.*, Exs. 3-4, cl. 1. Because the Parent Patents share the same disclosure as the Asserted Patents, the Parent Patents form part of the intrinsic record and should be carefully considered when interpreting the claims of the Asserted Patents, especially when attempting to understand Plaintiffs' intentions behind the vague, undefined terms above. *See E.I. du Pont*, 921 F.3d 1060, 1070 (Fed. Cir. 2019) (treating familial patents as intrinsic evidence that involve "common subject matter with the terms at issue").

### D. **Disputed Claim Terms**

#### 1. **Terms Invoking Section 112/6**

##### a. **"pivot support"**

| Claim Term | Claim(s) | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| **"pivot support"** | '684 Patent, cl. 1<br><br>'693 Patent, cl. 1 | structure that supports a pivotal connection. | [§112, ¶6] the disclosed "ball and socket joint [elements 30 and 64]" and equivalent structures |

The term *pivot support* as recited in claim 1 of the Asserted Patents invokes 35 U.S.C. § 112, ¶ 6 and should be construed as the disclosed "ball and socket joint [elements 30 and 64]" and equivalent structures.

###### i. **Section 112/6 Governs the Term *Pivot Support***

Claim 1 of the '693 Patent recites: "the connector including ***a pivot support*** between the first and second portions ***permitting relative movement there between at least about a generally longitudinal axis***" (emphases added).[3] The term "pivot

---

[3] Claim 1 of the '684 Patent is the same as claim 1 of the '693 Patent with the following underlined exception: "the connector including a pivot support between the first and second portions permitting relative movement there between <u>and along vertical and longitudinal axes</u>". Defendants refer to the language of the '693 Patent throughout this section because Plaintiffs admitted that the phrase "and along vertical and longitudinal axes" is "awkward" (Ex. 2 at 31 (Plaintiffs' Office Action Response dated July 21, 2014)), and that phrase is, in fact, entirely unsupported by the

support" is not found in the specification of the Asserted Patents.   Rather, *pivot support* is introduced for the first time in the claims as an indeterminate structure (or a so-called "means") for performing the recited function of "permitting relative movement [between the first and second portions] at least about a generally longitudinal axis."   In particular, based on the claim language itself, a POSITA would not understand that the term *pivot support* has a sufficiently definite meaning in the art as the name for any particular structure.   That is, a POSITA would not know what the structure of a "pivot support" is from the claim language; he or she would only know its function.   For example, asking a POSITA: "There's 'pivot support' in this box; what is it?", the POSITA would say something like: "I have no idea; it could be all sorts of different things."   Of course, this type of functional claiming is permitted by Section 112/6, but it always comes at a cost: the claims do not cover any and all structures that perform the recited function (as Plaintiffs contend).   Rather, the claims cover only the particular structure(s) disclosed in the patent's specification that perform that recited function, and structures equivalent thereto.

Although claim 1 does not expressly recite the word "means," ample evidence exists to rebut the presumption that Section 112/6 should not apply.   In determining whether to invoke Section 112/6, courts have first looked to "[a] plain reading of the term in context of the relevant claim language" and considered whether "the term is simply a description of the function performed."   *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016) (agreeing with the district court that "the term 'symbol generator' is analogous to a 'means for generating symbols'").   Also, in *Massachusetts Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006), the Federal Circuit upheld the district court's Section 112/6 treatment of the term "colorant selection mechanism" because it "[was]

---

specification, as Defendants will later demonstrate at the appropriate stage.   No arguments made herein are intended to waive or conflict with Defendants' position that claim 1 of the '684 Patent is unsupported and invalid under 35 U.S.C. § 112, ¶ 1.

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

not defined in the specification and ha[d] no dictionary definition, and there [was] no suggestion that it ha[d] a generally understood meaning in the art."

Here, by Plaintiffs' own suggestion, the claimed *pivot support* is a "**structure** that **supports** a **pivotal** connection" (emphasis added), which is analogous to *Advanced Ground* and simply a description fitting within the even more nebulous function of "permitting relative movement." The term *pivot support* is only recited once in claim 1, and nothing in the surrounding, relevant claim language (recited above) imparts any additional structure for the claimed *pivot support*. Indeed, as Plaintiffs implicitly concede, the inclusion of the word "pivot" in "pivot support" merely modifies the *support's* **function** of permitting relative movement between the first and second portions – it provides no information about the *support's* **structure**.

Additionally, the intrinsic evidence supports Section 112/6 treatment where it is undisputed that the term *pivot support* is not found anywhere outside of the claims— much less defined in the Asserted Patents' specification. Indeed, Plaintiffs responded to Defendants' Request for Admission No. 1 as follows: "Admit that neither of the Asserted Patents' specifications refer to the term 'pivot support' outside of the claims"; response: "To the extent that this specific compound term does not appear together outside of the claims, Plaintiff admit." Ex. 5 at 2. Plaintiffs continue to "point out that both of the Asserted Patents refer to a 'pivot body' and other parts that are 'pivotably mounted' for 'pivoting'". *Id*. But the claimed "pivot support" cannot be synonymous with the disclosed "pivot body" because the claims further specify that the "pivot support" includes, *inter alia*, a "pivot body". *See* Asserted Patents, cl. 13. And even in attempting to identify specification support for *pivot support*, Plaintiffs offer yet another means-plus-function description that uses a "pivotably mounted" "pivot body" as a means for "pivoting," which relate to the *pivot support's* **function** (the type of "relative movement" permitted), but not its **structure**.

Further, the term *pivot support* has neither a dictionary definition nor a generally understood meaning in the art, which is evidenced by Plaintiffs' lack of

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

submission of any extrinsic evidence to suggest otherwise or provide a definition for *pivot support* that is notably missing from the specification. Even had Plaintiffs provided individual definitions for "pivot" and "support" (which they have not), this would be insufficient because the focus must be on "the *combination* of the terms as used in the context of the relevant claim language"; here, the combined term: *pivot support*. *See Advanced Ground*, 830 F.3d at 1348 ("Irrespective of whether the terms 'symbol' and 'generator' are terms of art in computer science, the *combination* of the terms as used in the context of the relevant claim language suggests that it is simply an abstraction that describes the function being performed"). Based on the undisputed lack of specification reference and in the absence of extrinsic evidence to the contrary, the record makes clear that the combined term *pivot support* is used to suit one particular occasion in claim 1 and has not been adopted into use in the art generally.

Despite Defendants' P.L.R. 4-2 disclosure of their position that the claimed *pivot support* recites means-plus-function language, Plaintiffs' proposed construction "structure that supports a pivotal connection" also invokes the means-plus-function format, where Plaintiffs use the generic placeholder "structure" as a means for "support[ing] a pivotal connection." Plaintiffs' proposal sets forth an improperly circular (and still solely functional) definition that merely repurposes "supports" as a verb and "pivotal" as a functional modifier. *See Indus. Access Inc. v. Corelogic, Inc.*, No. SACV11473JLSFFMX, 2014 WL 12775082, at *7 (C.D. Cal. July 8, 2014) (rejecting a proposed construction as providing an improper "circular definition (i.e., one that uses the word that it attempts to define in the definition itself)" (quoting *Sparton Corp. v. U.S.*, 68 Fed. Cl. 34, 47 (Fed. Cl. 2005))). Plaintiffs' addition of the exceedingly generic placeholder "structure" does nothing to convey any ***definite*** structure to the claim term. Indeed, Plaintiffs' invocation of the generic word "structure" – the very word used in the statute as a generic "means" – reinforces the understanding that the claimed *pivot support* does not convey any definite structure. Here, rather than attempt to propose a dictionary definition or generally understood

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

1   meaning for the term *pivot support* (because there is none), Plaintiffs merely

2   reorganize the very words that they attempt to define. As such, Plaintiffs' proposed

3   construction is fatally flawed and should be rejected.

4   The intrinsic evidence discussed above, the absence of extrinsic evidence

5   suggesting a dictionary definition or generally understood meaning in the art for *pivot*

6   *support*, and Plaintiffs' own descriptions for *pivot support*, demonstrate that the

7   functionally claimed *pivot support* fails to recite sufficiently definite structure and,

8   thus, invokes Section 112/6. Accordingly, to determine what the claimed *pivot*

9   *support* is structurally, a POSITA would have no recourse but to turn to the patent's

10  specification to derive an understanding of what disclosed structure(s) perform(s) the

11  function of the generically claimed *pivot support*. More particularly, what structure or

12  structures in the Asserted Patents "permit[] relative movement [between the first and

13  second portions] at least about a generally longitudinal axis"?

ii.   <u>**The Corresponding Structure Includes the**</u>

<u>**Disclosed Ball and Socket Joint**</u>

16  To determine the corresponding structure in the specification that performs the

17  claimed function "permitting relative movement [between the first and second

18  portions] at least about a longitudinal axis," a POSITA would first need to ascertain

19  what is meant by "the first and second

20  portions." The first paragraph of claim 1

21  recites: "a connector having *a first portion*

22  *mountable to the weapon* and *a second*

23  *portion on which each of two legs are*

24  *attached* on opposing sides thereof,

25  respectively" (emphasis added). As shown in

26  annotated Figure 1 to the right, the "first"

27  portion mountable to the weapon is

28  clamp portion 12, and the "second"



FIG. 1

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

portion on which each of two legs are attached is **pivot body 60**.[4]

   Discussing the movement between clamp portion 12 and pivot body 60, the specification discloses:

> limited pivoting adjustment ***between clamp portion 12 and pivot body 60*** is accomplished by [a] ***ball and socket joint between the two*** wherein lower surface of clamp body 14 of clamp portion 12 presents a ***projecting ball portion 30*** and the upper surface of pivot body 60 includes a ***socket member 64*** for receiving ball portion 30.  This ***ball and socket joint*** can be seen in FIGS. 6B, 6C and 7A.

'684 Patent at 3:40-46 (emphases added).

Annotated Figure 6C to the right shows **ball portion 30** and **socket member 64** for permitting relative movement (*i.e.*, "limited pivoting adjustment") between **clamp portion 12** and **pivot body 60** about a **longitudinal axis L**.   The specification describes other elements that are also involved in permitting the relative movement or "pivoting" between clamp



FIG. 6C

portion 12 and pivot body 60, such as fastener 32, first pin 33, and second pin 72.  *See generally id.* at 3:47 – 4:18.  But even at its broadest interpretation, the claimed *pivot support* must, at a minimum, be construed to include the disclosed **ball portion 30** and **socket member 64** because these elements are essential to the claimed function and are the ***only*** structures disclosed in the patent's specification that are capable of permitting the claimed relative movement.  Defendants' construction here attempts to salvage the undefined term *pivot support* from indefiniteness, whereas Plaintiffs' construction (which excludes the disclosed ball and socket joint) would render this

---

[4] *See also* '684 Patent at 2:58-59 ("clamp portion 12 is adapted for securely engaging firearm stock 2."); *id.* at 4:42-43 (discussing "the mounting of leg assembly 100 to pivot body 60"); Ex. 5 at 2 (discussing the claimed *pivot support*, Plaintiffs "point out that both of the Asserted Patents refer to a ***'pivot body'*** and other parts that are 'pivotably mounted' for pivoting'" (emphasis added)).

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

term indefinite as lacking a corresponding structure in the specification.  *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) ("By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, . . . even when the drafting of their patents has been less than ideal.").

The dependent claims of the Asserted Patents further confirm that the structure of the term *pivot support* includes the ball and socket joint formed by ball portion 30 and socket member 64.  Dependent claim 7 recites: "the pivot support includes a ***ball and socket joint***" (emphasis added), and dependent claim 13 recites: "the first portion comprise[s] a clamp assembly . . . wherein the ***clamp assembly includes a ball member*** and the second portion comprises a ***pivot body having a socket*** provided therein in which the ball member is received and a fastener adjustably securing the ball member within the socket" (emphasis added).  Because Section 112/6 governs here, it is appropriate to look to structure recited in the dependent claims to interpret independent claim 1.  *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ("Simply stated, the judicially developed guide to claim interpretation known as 'claim differentiation' ***cannot override the [Section 112/6] statute***. A means-plus-function limitation is not made open-ended by the ***presence of another claim specifically claiming the disclosed structure which underlies the means clause*** or an equivalent of that structure." (emphases added)).  Here, dependent claims 7 and 13 are helpful for construing *pivot support* because they specifically claim the disclosed structure (*i.e.*, the disclosed ball and socket joint formed by ball portion 30 and socket member 64) that performs the function recited in claim 1.

Finally, the Parent Patents also provide intrinsic evidence of the structure for *pivot support*, both reciting at each of their respective independent claim 1:

> a clamp portion for clamping to a firearm,
> a pivot body mounted to said clamp portion,
> said ***clamp portion including a projecting ball portion*** and said ***pivot body including a socket member*** for receiving said projecting ball portion

Exs. 3-4, cl. 1 (emphases added).  As with dependent claims 7 and 13 of the Asserted Patents, the claim language of the Parent Patents also confirms that the structure for *pivot support* includes the "projecting ball portion" and "socket member."

Because the claim term *pivot support* fails to recite sufficiently definite structure, it should be governed by Section 112/6 and construed to cover the corresponding structure disclosed in the specification.  The specification makes clear that the disclosed corresponding structure includes, at a minimum, the ball and socket joint formed by ball portion 30 and socket member 64, which is confirmed by the Asserted Patents' dependent claims and the Parent Patents' claims.  Thus, a POSITA would understand the term *pivot support* as recited in claim 1 to be the disclosed "ball and socket joint [elements 30 and 64]" and equivalent structures.

**b.    "corresponding structure"**

| Claim Term | Claim(s) | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| **"corresponding structure"** | '684 Patent, cl. 1<br><br>'693 Patent, cl. 1 | a particular structural portion. | [§ 112, ¶ 6] the disclosed "position feature [element] 110 which is shaped to be received by any one of [the] position channels" and equivalent structures |

For reasons similar to those discussed above with respect to *pivot support*, the term *corresponding structure* should also be governed by 35 U.S.C. § 112, ¶ 6 and should be construed as the disclosed "position feature [element] 110 which is shaped to be received by any one of [the] position channels" and equivalent structures.

**i.    Section 112/6 Governs the Term *Corresponding Structure***

Claim 1 of the Asserted Patents recites: "each leg mount assembly further including a ***corresponding structure*** that can mate with and be releasably secured within one of the plurality of recesses" (emphasis added).  Here, "corresponding

structure" is used as a means for performing the function of "mat[ing] with and be[ing] releasably secured within one of the plurality of recesses." This claim language fails to provide any definite meaning for the term *corresponding structure* as the name for a generally adopted structure, and a POSITA would have to turn to the specification to derive any understanding of the structure of this term.

As with *pivot support*, sufficient evidence exists to rebut the presumption that Section 112/6 should not apply here in the absence of the word "means." Looking first at the claim language recited above, courts have used "for" and "that can" interchangeably, *see Advanced Ground*, 830 F.3d at 1347-48, and have looked beyond modifiers that "do[] not provide any structural significance," *see Williamson*, 792 F.3d at 1351. Here, substituting "for" and removing the non-structural modifier "corresponding" from the claim language leaves a "structure for mat[ing] with and be[ing] releasably secured within one of the plurality of recesses," which provides no recital that could help a POSITA derive any definite structure from the generically claimed "structure." Further, the specification is unhelpful in providing a definition for *corresponding structure* because, as with *pivot support*, this term is not used outside of the patents' claims—a fact which Plaintiffs do not dispute. *See* Ex. 5 at 5 ("To the extent that this specific compound term ["corresponding structure"] does not appear together outside of the claims, Plaintiffs admit.").

Of course, such a generic term as *corresponding structure* does not have a generally used and adopted meaning in the art that a POSITA would recognize as the name for a definite structure.[5] Not surprisingly then, Plaintiffs again fail to suggest any such meaning either through extrinsic evidence or their proposed construction.

---

[5] The term "corresponding structure" is so generic, in fact, that courts use it from the language of the Section 112/6 statute as a legal term of art in the means-plus-function analysis for a generic placeholder when searching through the specification for a definite structure. *See Applied Med. Res.*, 448 F.3d at 1332 ("[T]he court must identify the **corresponding structure** in the written description of the patent that performs [the claimed] function." (emphasis added)).

DEFENDANTS' OPENING
                                              CLAIM CONSTRUCTION BRIEF

1   Rather than submit evidence of a dictionary definition or generally understood

2   meaning for the combined term *corresponding structure* (which there is none),

3   Plaintiffs simply propose another structureless and improperly circular construction –

4   "a particular structural portion" – that repurposes the word "structural" and substitutes

5   "corresponding" with "particular," creating even more confusion as to the term's

6   definite structure (*i.e.*, "particular" to what?). Plaintiffs' proposed construction here is

7   just as amorphous as the claim language itself and should be rejected.

8   In the absence of extrinsic evidence or a proposed construction suggesting a

9   dictionary definition or generally understood meaning for *corresponding structure*,

10  the intrinsic evidence consisting of means-plus-function formatted claim language and

11  the lack of specification reference or definition for this term demonstrates that the

12  term *corresponding structure* lacks definite structure and invokes Section 112/6.

13  ## ii.  The Corresponding Structure Includes the
14  ## Disclosed Position Feature 110

15  The structural element disclosed in the specification that most corresponds to

16  the claimed function "mat[ing] with and be[ing] releasably secured within one of the

17  plurality of recesses" is position feature 110. The specification discloses:

18  The surface of head portion 104 which mates with mounting surface 92
19  includes a ***position feature 110 which is shaped to be received by any one
    of position channels 92B1, 9[2]B2, 9[2]B3 and 9[2]B4*** of leg mounting
    surface 92. . . . An operator, by applying pressure against the spring biasing
20  of inside leg 102 may ***pull a position feature 110 out of engagement with
    one of the position channels*** and then rotate inside leg 102 to another
21  position and then release inside leg 102 ***to cause engagement of position
    feature 110 with another selected position channel***.

23  '684 Patent at 5:32-36 (emphases added). As further explained below in Part

24  III.D.2.b, position channels 92B1, 92B2, 92B3, and 92B4 correspond to the claimed

25  *plurality of recesses*. *See id.* at 5:18-22 ("leg mounting surface 92 includes a recess

26  pattern 92A which further includes a center portion 92A1 and three radiating position

27  channels 92B1, 9[2]B2, 9[2]B3 and 9[2]B4 which communicate with center portion

28  92A1."). Thus, position feature 110 of head portion 104 mates with (*i.e.*, "is shaped to

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

1  be received by") and is releasably secured (*i.e.*, "pull[s] . . . out of engagement" and

2  "caus[es] engagement") within one of the plurality of recesses (*i.e.*, "with one of the

3  position channels"). Claim 1 of the parent '174 Patent confirms this understanding by

4  more closely and appropriately tracking the disclosure of the specification, reciting:

5  "each said head portion having a leg ***position feature* adapted for fitting into said**

6  ***position channels of said recess pattern*** of one said mounting surface". Ex. 3, cl. 1

7  (emphasis added).

8  By itself, the term "position feature" imparts little to no added structural

9  significance to the claimed *corresponding structure*. As with *pivot support*, a

10  POSITA would need to consult the specification to ascertain the structure of the

11  claimed *corresponding structure* that performs the recited function.



FIG. 9B    FIG. 9C

12  Figures 9B and 9C, annotated to the left, show

13  position feature 110 with a rectilinear head at the top of

14  head portion 104 above **slot 106**. These are essential

15  structural features for position feature 110 to perform the

16  function of mating with and being releasably secured

17  within one of the plurality of recesses/position channels.

18  The specification explains: "Head portion 104 is pivotably

19  mounted ***by a leg fastener 106[A] to a threaded bore 94***

20  in pivot block 60 shown in FIG. 6A. Head portion 104 of

21  inside leg 102 includes a ***slot 106 for accommodating leg***

22  ***fastener 106A*." *Id.* at 5:25-29 (emphases added).

23  As shown in annotated Figure 6A to the right,

24  position channels 92B1, 92B2, 92B3, and 92B4 are

25  situated radially above **threaded bore 94**, just as

26  position feature 110 is situated above slot 106 in Figure

27  9C. Further, the position channels are shown having

28  rectilinear features, within which the rectilinear head of



FIG. 6A

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

position feature 110 is **shaped** to be received.  Without a rectilinear head above slot 106 (which accommodates leg fastener 106A), position feature 110 would not be capable of mating with and being releasably secured within position channels 92B1, 92B2, 92B3, and 92B4.  Thus, a POSITA, only after reviewing the written description (and particularly the drawings), would understand the term *corresponding structure* as recited in claim 1 to be the disclosed "position feature [element] 110 which is shaped to be received by any one of [the] position channels" and equivalent structures.

## 2.  Terms Not Subject to Section 112/6

### a.  "stowable"

| Claim Term | Claim(s) | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "stowable" | '684 Patent, cl. 1<br><br>'693 Patent, cl. 1 | capable of staying in place without requiring it to be locked against movement. | lockable or releasably securable |

The term *stowable* should be construed as "lockable or releasably securable."  Defendants' proposed construction is consistent with the intrinsic evidence.  In context, claim 1 of each of the Asserted Patents recites:

> each leg mount assembly further including ***a corresponding structure that can mate with and releasably secured within*** one of the plurality of recesses ***so that*** when the structure is moved relative to a biased condition the leg can be moved around the pivot connection and the corresponding structure can be ***positioned in one of the plurality of recesses so as*** to permit each leg to be independently ***stowable in a rearward manner*** adjacent the weapon, ***stowable in a forward manner*** adjacent the weapon, and adjustably locked in any one of a plurality of positions there between.

'684 Patent, cl. 1 (emphases added).  As recited above, the action of "permit[ting] each leg to be independently stowable" requires that the corresponding structure of the leg be "mate[d] with and [] releasably secured within one of the plurality of recesses" and "positioned in one of the plurality of recesses."  The specification and drawings also support and confirm this requirement.

///

With reference to Figure 6A (shown below), the Asserted Patents' specification discloses:

> The surface head portion 104 which mates with mounting surface 92 includes a position feature 110 which is shaped to be received by any one of position channels 92B1, 9[2]B2, 9[2]B3 and 9[2]B4 of leg mounting surface 92. Placing position feature 110 in position channel 92B1 **_locks leg assembly 100 in a folded forward position_** shown in FIG. 4. Placing position feature 110 in position channel 92B2 **_locks_** leg assembly 100 in the angled forward position shown in FIG. 3. Placing position feature 110 in position channel 92B3 **_locks_** leg assembly 100 in the upright position shown in FIGS. 1 and 2. Placing position feature 110 in position channel 92B4 **_locks leg assembly 100 in the folded back position_** shown in FIG. 5.

*Id.* at 5:32-44 (emphases added).

The specification expressly describes that placing position feature 110—*i.e.*, the *corresponding structure* of claim 1, *see supra* Part III.D.1.b—in **position channels 92B1 and 92B4** shown in annotated Figure 6A to the right—*i.e.*, the *recesses* of claim 1, *see infra* Part III.D.2.b—**locks** leg assembly 100 in a folded forward and a folded back position (which the specification does not distinguish from locking in the "angled forward" and "upright" positions). Annotated Figures 4 and 5 below show <span style="color:#b59a00">leg assembly 100</span> locked in these folded forward and back positions when placed in channels 92B1 and 92B4.



FIG. 6A



FIG. 4          FIG. 5

The specification also emphasizes that leg assembly 100 can be "positioned in one of a relatively ***limited number of orientations**,*" touting that "[a] ***limited number of orientations is preferable**" because a multitude of possible orientations would

20

increase the difficulty of positioning opposite leg assemblies 100 in a symmetrical fashion." *Id.* at 4:37-41 (emphases added); *see also id.* at 4:56-59 ("Each leg mounting surface 92 and each leg assembly 100 have corresponding features which cooperate to allow an operator to ***place a leg assembly in one of a small number of positions***" (emphasis added)).  The small number of orientations/positions described throughout the specification and drawings are limited to the following four positions: "a generally upright position as shown in FIG. 2, an angled forward position as shown in FIG. 3, a ***folded forward position*** as shown in FIG. 4 and a ***folded back position*** as shown in FIG. 5." *Id.* at 4:59-62 (emphases added).

Based on the foregoing, the Asserted Patents contemplate a small number of position channels where the legs can be locked/releasably secured, two of which include well-defined forward and back/rearward position channels 92B1 and 92B4. Plaintiffs' proposed construction: "capable of staying in place without requiring it to be locked against movement" is not only wholly unsupported by the Asserted Patents' specification, but also entirely contradicts that disclosure.  *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) (rejecting a "proposed interpretation [that] is unsupported by, and indeed is contrary to, the specification").  Assuming Plaintiffs' undefined "it" refers to each of the claimed bipod legs, there is nothing in the intrinsic record that could support an interpretation allowing the legs to be in the forward or rearward positions, but not locked or secured in place.  That is, there is not a single reference, or even a single suggestion, that a leg could be folded in either a forward or rearward position and not be locked.  And indeed, in every discussion and illustration of the legs in the forward or rearward positions, they are locked.  Thus, Plaintiffs' proposal that "stowable" means "capable of staying in place ***without requiring it to be locked*** against movement" has been crafted to impermissibly broaden the claims for this litigation, finds no support in the Asserted Patents' specification, and directly contradicts the patents' express teachings.

///

1    In sum, claim 1 requires the corresponding structure (*i.e.*, position feature 110)

2    of each leg (*i.e.*, leg assembly 110) to be **releasably secured** within one of a plurality

3    of recesses (*e.g.*, position channels 92B1 and 92B4) **so as to permit** the legs to be

4    stowed in a forward and rearward manner.   Further, the specification expressly

5    describes (and the corresponding figures show) that "[p]lacing position feature 110 in

6    position channel 92B1 **locks** leg assembly 100 in a folded forward position" and

7    "[p]lacing position feature 110 in position channel 92B4 **locks** leg assembly 100 in the

8    folded back position."   Finally, the specification emphasizes the importance of

9    providing only a small number of positions for each leg in order to help with placing

10   the legs in a symmetrical fashion.   Construing *stowable* as allowing the legs ***not*** to be

11   "locked against movement"—as Plaintiffs argue—contradicts the claim language

12   requiring the legs to be "releasably secured" as well as the specification indicating that

13   the legs are "lock[ed]" when in the forward and back positions, and further runs

14   counter to the stated purpose of only allowing the legs to be placed in a small number

15   of specified positions.   Accordingly, a POSITA, reviewing the intrinsic record as a

16   whole, would understand that *stowable*, as recited in claim 1, means "lockable or

17   releasably securable."

18          **b.    "plurality of recesses"**

| Claim Term | Claim(s) | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| **"plurality of recesses"** | '684 Patent, cl. 1<br><br>'693 Patent, cl. 1 | multiple locations of indentation relative to a surface. | a setback surface with two or more communicating (interconnected) position channels |

25          The term *plurality of recesses* should be construed as "a setback surface with

26   two or more communicating (interconnected) position channels."   The intrinsic and

27   extrinsic records support this construction.

28          In *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305

(Fed. Cir. 2011), the Federal Circuit cautioned against "allow[ing] the claim language to become divorced from what the specification conveys is the invention."  As to its specific facts, the court explained that "while the claims leave open the possibility that the recited 'body' may encompass a syringe body composed of more than one piece, the specifications tell us otherwise," holding that "a construction of 'body' that limits the term to a one-piece body is required to tether the claims to what the specifications indicate the inventor actually invented" where the specifications "only disclose embodiments that are expressly limited to having a body that is a single piece."  *Id.*

Critically important here, the Asserted Patents' specification never discloses a "plurality of recesses."  Instead, the specification discloses a **single** "recess pattern" with a center portion and multiple communicating position channels:

> As can be seen in FIG. 6A, leg mounting surface 92 includes *a recess pattern 92A* which further includes *a center portion 92A1 and [four] radiating position channels* 92B1, 9[2]B2, 9[2]B3 and 9[2]B4 *which communicate with center portion 92A1*.

'684 Patent at 5:18-22 (emphases added).  As shown in annotated Figure 6A below, mounting surface 92 of pivot body 60 includes recess pattern 92A (dashed outline), which further includes center portion 92A1 and communicating position channels 92B1, 92B2, 92B3, and 92B4.



FIG. 6A

As originally filed in the application for the '684 Patent, claim 1 closely tracked this language from the specification, reciting: "each of said leg mounting surface

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

having *a pattern* of *at least three position channels*". Ex. 1 at 103 (emphases added). Claim 1 of the parent '174 Patent similarly tracks the disclosure of the specification, reciting: "each of said leg mounting surfaces having *a recess pattern* including *at least three position channels*".  Ex. 3 at 6:27-29 (emphases added).  However, the new term *plurality of recesses* completely departs from the specification, purporting to eliminate the sole disclosure of a singular recess pattern and, instead, creating multiple "recesses" despite no specification support for anything more than one recess.  If any attempt is to be made at reconciling this claim language with the specification, then it must include a single recessed surface with a pattern of multiple position channels. And the position channels must communicate in some way (such as through center portion 92A1) to ensure that the multiple channels are formed in one "recess pattern."

The unrefuted extrinsic evidence also supports Defendants' proposed construction.  The dictionary defines "recess" as "a space" that is "set back" (*see* Ex. 6 at 6) and "communicate" as "to be joined or connected" (Ex. 7 at 5).  Plaintiffs present no alternative definitions.  Defining "recess" as a setback surface aligns with the patents' drawings, where for example, annotated Figure 6 above shows a front profile view rotated 90 degrees from Figure 6A, as shown by **plane A-A** (*see* '684 Patent at 2:13-14 ("FIG. 6A is a plan view of one side of the pivot body taken from plane A-A of FIG. 6.")), where **recess pattern 92A** is set back from the rest of **mounting surface 92**.   And defining "communicate" as "interconnected" is consistent with Figure 6A above, which shows the position channels interconnected through **center portion 92A1**.

Defendants rely directly on both intrinsic and extrinsic evidence to support their proposed construction, but Plaintiffs do not and cannot do the same.  In stark contrast, rather than rely on the specification's clear terminology of "position channels," Plaintiffs attempt to impermissibly broaden the scope of their protection beyond their disclosure by proffering the unsubstantiated phrase "multiple locations of indentation relative to a surface."   Plaintiffs intentionally specify plural "locations" as the

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

elements being indented rather than the singular "surface."  But as explained above, there are no such plural "locations" that are "indented"; the specification discloses only a single surface that, itself, is recessed.

Plaintiffs' proposed construction is also inconsistent with their statements during prosecution of the '684 Patent.  In an Office Action Response dated November 2, 2012, Plaintiffs argued that "neither Keng, *Sefried* [nor] Garand, individually or collectively, teach or suggest the claimed features where *each of the opposing sides having a plurality of recesses* arranged there about". Ex. 1 at 31 (emphases added).  But Plaintiffs' proposed construction for *plurality of recesses* would read on Sefried where, as shown below in annotated Figures 3, 4, and 8, notches 35 and 36 could be the "multiple locations of indentation relative to a surface" if the "surface" is viewed as the rounded edges of fingers 12 and the "indentations" are viewed as notches 35 and 36 in those edges.  Plaintiffs cannot attempt to expand their protection to cover prior art disclosures that they have previously distinguished.



Fig. 3                Fig. 4                Fig. 8

Accordingly, the POSITA, reviewing the intrinsic and extrinsic record as a whole, would understand that *plurality of recesses*, as recited in claim 1, means "a setback surface with two or more communicating (interconnected) position channels."

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' proposed constructions and reject Plaintiffs' proposed constructions.

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: May 10, 2021                         WOMBLE BOND DICKINSON (US) LLP

By:  /s/ Tyler R. Train
Brenton R. Babcock
Tyler R. Train
Attorneys for Defendants,
Accu-Tac, LLC, a California limited liability
company and Luis Felipe Salazar, an
individual

DEFENDANTS' OPENING
CLAIM CONSTRUCTION BRIEF