1  Brenton R. Babcock (CA Bar No. 162120)
   Tyler R. Train (CA Bar No. 318998)
2  WOMBLE BOND DICKINSON (US) LLP
   400 Spectrum Center Drive, Suite 1700
3  Irvine, CA 92618
   Telephone: 714-557-3800
4  Facsimile: 714-557-3347
   Email: brent.babcock@wbd-us.com
5  Email: tyler.train@wbd-us.com

6  Attorneys for Defendants/Counterclaim Plaintiffs
   Accu-Tac, LLC, a California limited liability
7  company, and Luis Felipe Salazar, an individual

8

9                    UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

11

12 | B-5, INC., a Kansas corporation; and B & T | Case No. 5:20-cv-00532-PSG-KK
   | INDUSTRIES, LLC, a Kansas limited
13 | liability company,
   |                                              | Honorable Philip S. Gutierrez
14 |     Plaintiffs/Counterclaim Defendants,
   |                                              | **DEFENDANTS' RESPONSIVE**
15 |     v.                                       | **CLAIM CONSTRUCTION BRIEF**
   |
16 | ACCU-TAC, LLC, a California limited
   | liability company; LUIS FELIPE
17 | SALAZAR, an individual; and DOES 1
   | through 50, inclusive,
18 |
   |     Defendants/Counterclaim Plaintiffs.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. Terms Invoking Section 112/6 ...................................................................2

        1. "pivot support" ..................................................................................2

            a. Plaintiffs Effectively Concede that *Pivot Support* Invokes Section 112/6 ..........................................................2

            b. The Parties Do Not Dispute that the Corresponding Structure for *Pivot Support* Includes the Disclosed Ball and Socket Joint ..........................................................4

        2. "corresponding structure" .................................................................7

            a. The Claimed *Corresponding Structure* Can Only be Described Functionally ..............................................................7

            b. The Parties Agree that the Corresponding Structure Includes the Disclosed Position Feature 110 .........................9

    B. Terms Not Subject to Section 112/6 ...........................................................9

        1. "stowable" .........................................................................................9

        2. "plurality of recesses" .....................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ..... 1

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ........................ 3

*Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213 (Fed. Cir. 1998) ................ 7

*On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340
    (Fed. Cir. 2006) ..................................................................................... 10-11

*Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362
    (Fed. Cir. 2016) ............................................................................................. 9

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) ................ 2, 3

**Federal Statutes**

35 U.S.C. § 112, ¶ 6 ........................................................................................ passim

# DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

## I. INTRODUCTION

Plaintiffs' Opening Brief (Dkt. 37) reveals two significant and overarching deficiencies in Plaintiffs' proposed claim constructions. <u>First</u>, of the four claim terms in dispute, ***none*** are found in the two Asserted Patents' common specification. And while some of the claim terms may have more analogous counterpart disclosures in the specification than others, Plaintiffs now endeavor to use those very ambiguities—which they intentionally created in crafting their second-generation patent claims—to their own unfair advantage. Specifically, Plaintiffs now attempt to broaden each disputed claim term to encompass a scope that far exceeds any possible disclosure in the patents' specification. But as the original drafters of the patents, Plaintiffs alone were in the position to resolve those ambiguities in their claims during the patent prosecution process, before the patents issued. Accordingly, those ambiguities should not inure to ***Plaintiffs'*** benefit, but instead to the ***public's*** benefit. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ("We note that the patent drafter is in the best position to resolve the ambiguity in the patent claims"). For this reason, adopting Plaintiffs' proposed constructions would unfairly expand their patent protection well beyond what they are entitled to, and render the Asserted Patents' invalid for failure to provide adequate written description for their claims.

<u>Second</u>, Plaintiffs' Opening Brief proceeds almost entirely on the defensive—raising purported concerns with Defendants' proposed constructions, but largely failing to advocate for Plaintiffs' own proposed constructions. While some anticipation and attempted preemption can be expected in an opening claim construction brief, the primary focus should be presenting evidence to support Plaintiffs' proposed constructions. Plaintiffs' failure to offer such support reveals the fundamental inadequacies of their proposed constructions; namely, that there is little evidence to support those constructions, and crucially, that there is no support from the most important source of intrinsic evidence—the patents' specification.

## II. ARGUMENT

### A. Terms Invoking Section 112/6

Plaintiffs argue that "[i]t is far-fetched to consider either 'corresponding structure' or "pivot support' to lack a 'sufficiently definite structure' when each phrase either explicitly includes the word 'structure' or implies the necessity for one." Pls.' Opening Br. at 10:13-15. But Plaintiffs' circular reasoning here, that a term provides a "sufficiently definite <u>structure</u>" merely because it recites the word "<u>structure</u>" or implicitly needs some structure, completely eludes the Congressional intent behind Section 112/6: "Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed . . . while placing specific constraints on how such a limitation is to be construed[.]" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). Rather than hiding behind the facially generic placeholder "structure," Plaintiffs must show where the words of the ***claims*** provide a ***sufficiently definite meaning*** as the name for a particular structure. Despite Plaintiffs' misguided efforts, they cannot satisfy this showing with references to structures in the ***specification***, nor with functional language in the claims. As explained below, Plaintiffs completely fail to show where the claims provide sufficiently definite structure for the terms *pivot support* and *corresponding structure*. Thus, these terms invoke Section 112/6 and should be construed to be limited to their respective corresponding structures disclosed in the specification, and equivalent structures.

#### 1. "pivot support"

##### a. Plaintiffs Effectively Concede that *Pivot Support* Invokes Section 112/6

Plaintiffs' first sentence in Part V.A.2 of their Opening Brief highlights the fatal flaw behind their entire Section 112/6 *pivot support* argument: "As for 'pivot support,' the ***specification*** [] provides sufficient information to define the structure." Pls.' Opening Br. at 12 (emphasis added). Indeed, Defendants do not dispute that the ***specification*** describes a structure for the claimed *pivot support* (primarily, the ball

-2-   DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF

portion 30 and socket member 64, plus ancillary components). But by proceeding immediately to the specification, Plaintiffs skip the critical first step in the Section 112/6 inquiry of determining "whether the **words of the <u>claim</u>** are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348 (emphasis added); *see also* 35 U.S.C. § 112, ¶ 6 ("An element in a claim for a combination may be expressed as a means [] for performing a specified function without the recital of structure [] in support thereof, and such claim shall be construed to cover **the corresponding structure** [] **described in the <u>specification</u>** and equivalents thereof.") (emphasis added).

Plaintiffs further suggest that "[t]he broad language of Claim 1 permits any iteration of a 'pivot support' to connect the first portion (*i.e.*, the clamp portion) and the second portion (*i.e.*, the pivot body) provided the 'pivot support' permits relative movement between the first and second portions". Pls.' Opening Br. at 17:15-18. But this just confirms Plaintiffs' unfair attempt to encompass **any** structure that performs the recited function, including structures that are neither disclosed in the specification nor equivalent thereto, which is the antithesis of the requirements of Section 112/6.

Finally, as anticipated, Plaintiffs raise the issue of claim differentiation, complaining that "read[ing] the 'ball and socket' limitation into the disclosure of Claim 1 . . . would effectively limit the scope of Claim 1 to that of dependent claim 3 and/or 13." *Id.* at 17:24-26. But as explained in Defendants' Opening Brief, claim differentiation cannot override Section 112/6. *See* Defs.' Opening Br. at 14:13-20 (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)). And consistent with the statutory language, Defendants' inclusion in their proposed construction of "and equivalent structures" to the disclosed ball and socket joint further defeats Plaintiffs' claim differentiation argument because claim 1 is necessarily broader than the dependent claims that only recite a ball and socket joint.

Because Plaintiffs entirely fail to argue that the words of the ***claim*** provide sufficiently definite structure for the term *pivot support*, Plaintiffs effectively concede

-3- DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF

that *pivot support* invokes Section 112/6.

    b. **The Parties Do Not Dispute that the Corresponding Structure for *Pivot Support* Includes the Disclosed Ball and Socket Joint**

  Following Plaintiffs' lead, the Section 112/6 analysis for *pivot support* may then proceed to a review of the specification to identify the corresponding structure that performs the recited function. Fortunately, Plaintiffs and Defendants appear to be in agreement in this regard. Explaining that "the specification . . . lays an explicit framework for a structure that the 'pivot support' could take," Plaintiffs quote the same passage from the specification as Defendants do in their Opening Brief:

> In this example embodiment, this limited pivoting adjustment between clamp portion 12 and pivot body 60 is accomplished by **_ball and socket joint_** between the two wherein lower surface of clamp body 14 of clamp portion 12 presents a **_projecting ball portion 30_** and the upper surface of pivot body 60 includes a **_socket member 64_** for receiving ball portion 30.

Pls.' Opening Br. at 12:24-28 (quoting '684 Patent at 3:40-46) (emphases added); *see also* Defs.' Opening Br. at 13:4-7 (quoting same). Plaintiffs continue, "FIG. 6C [] further demonstrates a sufficiently definite structure in which the 'pivot support' connects the clamp portion 12 to the pivot body 60, all while permitting relative movement between the two." Pls.' Opening Br. at 13:1-3. As shown in annotated Fig. 6C to the right, **ball portion 30** and **socket member 64** are the primary elements that permit relative movement between **clamp portion 12** and **pivot body 60** about **longitudinal axis L**. Accordingly, the parties agree that the corresponding structure in the specification that performs the claimed function of "permitting relative movement [between the clamp portion and the pivot body]" includes the ball and socket joint formed by **ball portion 30** and **socket member 64**.



FIG. 6C

  Plaintiffs subsequently suggest that "the 'pivot support' could take the form of a 'first pin 33'". Pls.' Opening Br. at 13:6. But Defendants do not dispute that **first pin**

33, shown above in Fig. 6C, is an element described and illustrated as an ancillary component, where **ball portion 30** and **socket member 64** primarily perform the claimed function of permitting relative movement between clamp portion 12 and pivot body 60. In fact, Defendants acknowledge as much in their own Opening Brief, explaining: "The specification describes other elements that are ***also involved in permitting the relative movement*** or 'pivoting' between clamp portion 12 and pivot body 60, such as ***fastener 32, <u>first pin 33</u>, and second pin 72***." Defs.' Opening Br. at 13:13-18 (emphases added). By only including the primary ball portion 30 and socket member 64 in their proposed construction, Defendants endeavored to propose the broadest possible interpretation of the specification's corresponding structure for *pivot support*. But to the extent that Defendants would prefer further details, such as "the disclosed 'ball and socket joint [elements 30 and 64]', <u>'fastener [element 32]', 'first pin [element 33]', and 'second pin [element 72]'</u>, and equivalent structures" for the construction of *pivot support* (having argued that these additional components are also involved in performing the claimed function), Defendants would accept such a friendly amendment.

Defendants have explained that the specification provides only a single embodiment for performing the recited function—the ball and socket joint. Defs.' Opening Br., Part III.D.1.a.ii. Surprisingly, Plaintiffs argue that "an alternative embodiment exists which performs the same function without the need for a ball and socket structure." Pls.' Opening Br. 18:15-16. Even under the most liberal reading of the specification, however, this suggestion is entirely false. The ***only*** support that Plaintiffs provide for this proposition is a half-page block quote repeating the ***identical attorney argument*** that Plaintiffs present just a few pages earlier in their *same* Opening Brief. *See id.* at 18:18 – 19:2 (essentially arguing, "I'm right because I said so previously"). For the avoidance of any doubt, the specification sets forth absolutely no "alternative embodiment" that performs the claimed function "without the need for a ball and socket structure." *Id.* at 18:15-16. Plaintiffs' wholly fabricated

-5- DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF

contention that an alternative embodiment exists where first pin 33 can perform the claimed function alone without the disclosed ball and socket joint is entirely unsupported by the patents' specification and drawings. Indeed, quite the opposite is true; the specification explains, "[f]irst pin 33 passes through the center of ball shaped head 32A, is also **aligned with the center of <u>ball portion 30</u>**". '684 Patent at 3:55-57. At the risk of overstating this point, but because of its central importance here, Defendants present below the full passage from the specification containing the only three mentions of "first pin 33," along with the only figures referenced in the entire paragraph surrounding this passage—Figs. 6B, 6C, and 7A:

> In this example, head 32A of fastener 32 is pinned to clamp portion 12 by a first pin 33. First pin 33 passes through the center of ball shaped head 32A, is also aligned with the center of ball portion 30 and is also substantially co-axial with longitudinal axis L. First pin 33 is retained by a slot 37 in clamp body 14 so that clamp body 14 can pivot about longitudinal axis L with respect to pivot body 60.

'684 Patent at 3:54-60.



*Id.*, Figs. 6B, 6C, 7A. As shown above, the specification nowhere contemplates any embodiments having **first pin 33** without **ball portion 30** or **socket member 64**.

Because ball portion 30 and socket member 64 are essential elements described in the specification as performing the function of the *pivot support* recited in the claims, this term must be construed, at a minimum, to include the ball and socket joint formed by ball portion 30 and socket member 64, and equivalent structures.

### 2. "corresponding structure"

#### a. The Claimed *Corresponding Structure* Can Only be Described Functionally

Plaintiffs argue that "[t]he structure of the 'corresponding structure' is sufficiently defined in the context of Claim 1" because the *corresponding structure* "is configured ***to mate or interact with a recess*** on the leg mount assembly in order ***to secure the leg assembly*** in a specific place." Pls.' Opening Br. at 10:25 – 11:2 (emphasis added). But here, Plaintiffs are merely regurgitating the *function* recited in the claim in a feeble effort to describe the *structure* of the claimed *corresponding structure*.[1] In particular, the claim recites the function of the *corresponding structure* as "***mat[ing] with and be[ing] releasably secured*** within one of the plurality of recesses." The Federal Circuit has expressly distinguished between the recitation of function and the recitation of definite structure in a claim limitation. *E.g.*, *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213 (Fed. Cir. 1998) ("[T]he limitation's language does not provide any structure. The limitation is drafted as a function to be performed rather than definite structure or materials."). Consequently, Plaintiffs' reliance on the claimed *function* cannot avoid Section 112/6, and instead confirms that 112/6 treatment is necessary. Indeed, if functional language could spare claim terms from Section 112/6, then the statute would be meaningless.

---

[1] Plaintiffs reiterate these two functions frequently as a consistent theme in their argument. *See, e.g.*, Pls.' Opening Br. at 11:6-8 ("the 'structure' must be constructed ***to 'mate' with any one of the recesses*** . . . and [] the structure must be ***capable of securing the leg assembly in place*** when 'mated' with a recess."); *id.* at 11:23-26 ("the 'corresponding structure' . . . is shaped in a way that enables it ***to interact and mate with any one of the recesses*** . . . and allows an operator ***to place a leg assembly in any one of a number of positions***"); *id.* at 11:28-12:2 ("The structure . . . must be capable [of] ***interacting/mating with the plurality of position recesses***, and it must be ***capable of securing the leg assembly in place***"); *id.* at 12:2-6 ("A person of ordinary skill would understand the parameters of what shape the structure may take based on . . . the need that it be ***capable of mating with a recess*** and ***securing the leg assembly in place***."); *id.* at 12:6-8 ("A person of ordinary skill would also understand that the shape need not perfectly mesh with the recess, so long as the shape ***operates to mate therewith*** and ***secure the leg in place***".) (all emphases added).

-7-     DEFENDANTS' RESPONSIVE
         CLAIM CONSTRUCTION BRIEF

Plaintiffs also argue that the claim provides sufficiently definite structure for the term *corresponding structure* because "the 'structure' must be located on the leg mount assembly". Pls.' Opening Br. at 11:5-6. But claim 1 recites nothing about where the *corresponding structure* is "located"; rather, it merely recites: "each leg mount assembly further **including** a corresponding structure" (emphasis added). Plaintiffs subsequently attempt to confuse the claimed "leg mount assembly" with different structures in the specification, arguing that the shape of the *corresponding structure* is based on "its location on the leg assembly 100" and "its relation to the leg mount assembly 92". *Id.* at 12:4-5. But neither element 100 (the "leg assembly") nor element 92 (the "mounting surface") in the specification are the claimed "leg mount assembly." While the terms may sound similar, "leg assembly 100" corresponds more closely to the claimed "two legs [that] are attached on opposing sides [of the second portion]." '684 Patent, cl. 1. And Plaintiffs' repeated attempt to pass off "mounting surface 92" as "leg mount assembly 92" is wholly misleading and mischaracterizes the specification. The claimed "leg mount assembly" (which, like many other claim terms, appears nowhere in the specification) is, in fact, not a single structure on which something could be "located." Instead, the claimed "leg mount assembly" is exactly what it sounds like—an assembly of parts for mounting the legs, "including a pivot connection" and "further including a corresponding structure." '684 Patent, cl. 1. And finally, even assuming *arguendo* that the claim did provide a vague clue as to the possible location of the *corresponding structure*, any such hint alone would not provide a sufficiently definite structure to escape Section 112/6.

The remainder of Plaintiffs' arguments to avoid the consequences of Section 112/6 treatment here focus on the premise that "[t]he specification and drawings for each patent-in-suit further explain and illustrate the structure of the 'corresponding structure'". *Id.* at 11:15-16. But as discussed above, reliance on the specification and drawings simply confirms that words of the **claim** fail to provide a sufficiently definite structure. Because Plaintiffs are unable to point to anything other than functional

-8- DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF

language from the claim to describe the *corresponding structure*, and rely solely on the specification to define its structure, this term necessarily invokes Section 112/6.

### b. The Parties Agree that the Corresponding Structure Includes the Disclosed Position Feature 110

In identifying the specification's support for the claimed *corresponding structure*, Plaintiffs explain, "[t]he surface of head portion 104 which mates with mounting surface 92 includes a position feature 110," and later even write "the 'corresponding structure *i.e.*, the position feature 110". *Id.* at 11:19-24. Plaintiffs provide no alternative elements or embodiments here, which is understandable because there is only a single embodiment disclosed in the specification. Because Defendants agree that the claimed *corresponding structure* best corresponds with the disclosed position feature 110, Defendants will not further belabor this point.

The term *corresponding structure* invokes Section 112/6 because it claims a structure by merely reciting its function (what it ***does***) without reciting any definite structure (what it ***is***), and should thus be construed accordingly as the disclosed "position feature [element] 110 which is shaped to be received by any one of [the] position channels" and equivalent structures.

## B. Terms Not Subject to Section 112/6

### 1. "stowable"

In stark contrast to Plaintiffs' heavy—and improper—reliance on the specification to avoid Section 112/6 discussed above, when discussing the term *stowable*, Plaintiffs wish to completely ignore the specification and instead focus solely on the claim language in a vacuum, thereby hoping to impermissibly broaden this term. But Plaintiffs again conduct the wrong analysis. Without support, Plaintiffs assert, "[t]he claims are the primary resource for determining the scope of the invention." Pls.' Opening Br. at 2:1-2. But the Federal Circuit has held that "[t]he ***specification*** is the single best guide to the meaning of a disputed term, and is, thus, the ***primary basis*** for construing the claims." *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (emphases added)

(internal quotations and citations omitted). Defendants acknowledge that both the claims and specification are critically important, and to the extent possible, claim constructions should be informed by both.

With a myopic focus on the claim language in isolation (to the exclusion of the specification), Plaintiffs argue: "the claim[ed] 'stowable' is distinct and used separately from 'locked.'" Pls.' Opening Br. at 14:11-12. Plaintiffs then attempt to mischaracterize Defendants' position as: "'stowable' [] simply mean[s] 'lockable'". *Id.* at 14:23-24. But this argument purposely misreads Defendants' proposed construction, which Defendants deliberately broadened to read "lockable **or** releasably securable" in anticipation of Plaintiffs' argument here.[2] As explained below, while any construction broader than "locked" likely exceeds the scope of the specification, Defendants nevertheless endeavored to propose a construction that remained as faithful to the specification as possible while also addressing Plaintiffs' concerns of the differentiation between "locked" and "stowable." Conversely, Plaintiffs' construction overreaches and far exceeds the specification's disclosure.

Plaintiffs argue that they made "the deliberate choice of the word 'stowable' for certain leg orientations versus 'locked' for others." *Id.* at 16:20-21. But this particular ***after-filing*** distinction is only present in the second generation claims, and Plaintiffs admit that "the ***specification*** uses the word 'locks' in conjunction with the folded [forward and rearward] positions." *Id.* at 16:6-7 (emphasis added). So any belated strategic "choice" that Plaintiffs made ***after*** filing the patents' specification in an effort to broaden their claim scope by using a new term "stowable" rather than "locked" would be an improper attempt by Plaintiffs to claim broader than they disclosed in the specification (especially considering that the word "stowable" never appears in the specification). *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442

---

[2] In discussing the function of the *corresponding structure*, Plaintiffs repeatedly acknowledge that it is "***to secure*** the leg assembly in a specific place". Pls.' Opening Br. at 10:25 – 11:2 (emphasis added); *see supra* note 1.

F.3d 1331, 1340 (Fed. Cir. 2006) ("the claims cannot be of broader scope than the invention that is set forth in the specification."). The specification does not distinguish between the positioning of the various leg orientations or even contemplate different, open-ended possibilities for such positioning. Plaintiffs concede that "**FIGS. 4 and 5** [] illustrate the leg assemblies in their stowed positions, *i.e.*, rearward and forward adjacent the weapon." Pls.' Opening Br. at 14:27-28 (emphasis added). But the specification discloses, in no uncertain terms: "Placing position feature 110 in position channel 92B1 <u>*locks*</u> leg assembly 100 in a **folded forward position shown in FIG. 4**"; and "Placing position feature 110 in position channel 92B4 <u>*locks*</u> leg assembly 100 in the **folded back position shown in FIG. 5**." '684 Patent at 5:36-44 (emphases added). So Plaintiffs' argument that there is "no *requirement* that the legs be capable of 'locking' into the 'stowed' position when evaluating the language of the claims," *id.* at 16:13-14, wholly contravenes the express disclosure in the patents' specification and, if adopted, would render the Asserted Patents' claims invalid for lacking adequate written description support. If any attempt can be made to reconcile the claim term *stowable* with the specification from which it is noticeably absent, then Defendants' proposed construction "lockable or releasably securable" represents the broadest possible construction for that term.

### 2. "plurality of recesses"

Plaintiffs again try to impermissibly broaden an undefined claim term, here *plurality of recesses*, beyond what the patents' specification supports. Time after time, Plaintiffs refer to the plural "recesses" in their argument, but the specification only discloses a <u>single</u> "recess pattern 92A." Plaintiffs dismiss the specification's disclosure of recess pattern 92A as an "isolated excerpt[] from the specification," Pls.' Opening Br. at 20:15, when actually, this excerpt is only "isolated" because it is the ***only*** pertinent mention of "recess" in the entire specification. The specification does not disclose an alternative embodiment where there are multiple (or a "plurality") of recesses. And Plaintiffs even admit that the claimed "recesses" correspond to the

-11- DEFENDANTS' RESPONSIVE
CLAIM CONSTRUCTION BRIEF

specification's disclosure of "position channels," *see id.* at 21:10, which are formed in recess pattern 92A and shown below in Fig. 6A as interconnected channels setback into mounting surface 92. Arguing that "FIG. 6A is a *singular* example of how the leg mounting surface 92 *could* be designed," *id.* at 22:12-13, Plaintiffs alternatively present FIG. 3A as "depict[ing] a leg mounting surface 92 wherein recesses are formed via indentations around the perimeter of the leg mounting surface 92," *id.* at 22:19-20. But Plaintiffs engage in pure speculation here because, as shown below, Fig. 3A does not point to mounting surface 92, recess pattern 92A, or position channels 92B1-B4, and its related discussion in the specification includes nothing in this regard. In fact, Fig. 3A is a strange outlier in the Asserted Patents, being the only figure to show a configuration with apparently two leg fasteners. *See* Fig. 8, element 106A. Even base Fig. **3** (from which Fig. **3A** was derived) shows the same device as all of the other figures. Given the numerous errors in the Asserted Patents, Fig. 3A represents yet another obscurity that Plaintiffs are now attempting to abuse to broaden their protection. But even assuming *arguendo* that Fig. 3A were purposely included as a different embodiment (contrary to the express disclosure in the specification), Defendants' proposed construction remains consistent with this drawing. As shown below, Fig. 3A has a **surface with communicating (interconnected) channels** that is setback from a **mounting surface**, just as shown in Fig. 6A. To better illustrate these common features, a perspective drawing of Fig. 6A is provided below (center):



Thus, the Court should adopt Defendants' construction for *plurality of recesses.*

| | | |
|---|---|---|
| 1 | Dated: May 24, 2021 | WOMBLE BOND DICKINSON (US) LLP |
| 2 | | |
| 3 | | By: /s/ Tyler R. Train |
| 4 | | Brenton R. Babcock<br>Tyler R. Train<br>Attorneys for Defendants, |
| 5 | | Accu-Tac, LLC, a California limited liability company and Luis Felipe Salazar, an individual |
| 6 | | |