## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

Present: The Honorable  Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS IN PART and DENIES IN PART Defendants' motion for partial summary judgment, DENIES Plaintiffs' motion for summary judgment of validity, and GRANTS Defendants' motion to stay.**

Before the Court are two dispositive motions and one motion to stay. First, Plaintiffs B-5, Inc. ("B-5") and B&T Industries, LLC ("B&T") (collectively, "Plaintiffs") filed a Motion for Summary Judgment of Validity. *See generally* Dkt. # 58 ("*Pls.' MSJ*"). Defendants Accu-Tac, LLC ("Accu-Tac") and Luis Felipe Salazar ("Salazar") (collectively, "Defendants") opposed, *see generally* Dkt. # 74 ("*Opp. to Pls.' MSJ*"), and Plaintiffs replied, *see generally* Dkt. # 78 ("*Reply ISO Pls.' MSJ*"). Second, Defendants filed a Motion for Partial Summary Judgment. *See generally* Dkt. # 63 ("*Defs.' MSJ*") (sealed version at Dkt. # 68). Plaintiffs opposed, *see generally* Dkt. # 71 ("*Opp. to Defs.' MSJ*") (sealed version at Dkt. # 73-2), and Defendants replied, *see generally* Dkt. # 80 ("*Reply ISO Defs.' MSJ*"). Third, Defendants filed a Motion to Stay Case Pending Ex Parte Reexamination. *See generally* Dkt. # 62 ("*MTS*"). Plaintiffs opposed, *see generally* Dkt. # 70 ("*MTS Opp.*") (sealed version at Dkt. # 73-1), and Defendants replied, *see generally* Dkt. # 81 ("*MTS Reply*"). The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15). Having considered the moving, opposing, and reply papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Summary Judgment, **DENIES** Plaintiffs' Motion for Summary Judgment of Validity, and **GRANTS** Defendants' Motion to Stay Case Pending Ex Parte Reexamination.

I.   Background

This is a patent infringement case. Plaintiffs allege that Defendants' manufacture, use, offer for sale, sale, and/or importation into the United States of firearm support bipods infringe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

U.S. Patent No. 8,904,693 ("the '693 Patent"). *See generally Complaint*, Dkt. # 1 ("*Compl.*");
*First Amended Complaint*, Dkt. # 11 ("*FAC*").[1]

Plaintiffs allege that B-5 is the owner by assignment of the '693 Patent. *FAC* ¶ 15. The
'693 Patent is titled "Bipod Firearm Support," was filed on March 26, 2013, and issued on
December 9, 2014. *See id.* The '693 Patent claims priority to Provisional Application No.
60/685,852 ("the Provisional Application"), filed on March 31, 2005, and relates to U.S. Patent
Nos. 7,614,174 ("the '174 Patent") and 7,793,454 ("the '454 Patent"). *See* Dkt. # 63-13
("*Provisional Application*"). Plaintiffs allege that Defendants infringe Claims 1–3 of the '693
Patent ("the Asserted Claims"). *See Pls.' MSJ* 1 n.1 (explaining that Plaintiffs have dropped
Claim 6). Claim 1, the sole independent Claim, recites:

> 1.    A bipod weapon support comprising:
> a connector having a first portion mountable to the weapon and a second portion
>        on which each of two legs are attached on opposing sides thereof, respectively; the
>        connector including a pivot support between the first and second portions
>        permitting relative movement there between at least about a generally longitudinal
>        axis; and
> each leg is independently mounted to and movable on the opposing sides of the
>        second portion by a leg mount assembly including a pivot connection that is biased
>        in place, each of the opposing sides having a plurality of recesses arranged there
>        about, each leg mount assembly further including a corresponding structure that
>        can mate with and be releasably secured within one of the plurality of recesses so
>        that when the structure is moved relative to a biased condition the leg can be
>        moved around the pivot connection and the corresponding structure can be
>        positioned in one of the plurality of recesses so as to permit each leg to be
>        independently stowable in a rearward manner adjacent the weapon, stowable in a
>        forward manner adjacent the weapon, and adjustably locked in any one of a
>        plurality of positions there between.

'693 Patent, Claim 1. Both Claims 2 and 3 depend from Claim 1.

On June 10, 2021, the Court issued its *Markman* Order, construing the following terms
found in Claim 1: "stowable," "pivot support," "plurality of recesses," and "corresponding

---

[1] The parties have since stipulated to dropping the claims related to U.S. Patent No. 8,402,684
("the '684 Patent"). *See* Dkts. # 53, 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
| --- | --- | --- | --- |
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

structure." *See generally Claim Construction Order*, Dkt. # 47 ("*Markman Order*").

On January 10, 2022, Accu-Tac filed a request for ex parte reexamination of the '693 Patent before the U.S. Patent and Trademark Office ("PTO"). *See generally* Dkt. # 62-3. The same day, Defendants filed a motion to stay this litigation pending the conclusion of the reexamination, *see generally MTS*, and the parties each filed their motions for summary judgment, *see generally Pls.' MSJ*; *Defs.' MSJ*. On February 17—the day before Defendants filed their reply brief in support of their motion to stay—the PTO granted Accu-Tac's request for ex parte reexamination. *MTS Reply* 1:2–5; *see generally* Dkt. # 81-2 ("*PTO Order*").

II.    Legal Standards

    A.    Summary Judgment

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

B.    Patent Infringement

A determination of infringement, or lack thereof, of a U.S. patent requires a two-step analysis. *See PC Connector Sols.. LLC v. SmartDiskCorp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005).

First, the court must ascertain the scope of the claims as a matter of law. *Id.*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc). Construction of the claims need not be an exhaustive process, "[a]s long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes." *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2011) (affirming summary judgment of non-infringement without providing a complete claim construction because disputed terms were properly construed to exclude the structures that were used in the accused device).

In the second step of infringement analysis, the court determines whether the properly construed claims cover the accused device, either literally or under the doctrine of equivalents. *See PC Connector*, 406 F.3d at 1362, 1364. Although this second step is a question of fact, when there are no genuine issues of material fact in dispute, a grant of summary judgment is proper. *Id.* at 1364; *see also Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1324 (Fed. Cir. 2002) ("[W]here the parties do not dispute any relevant facts regarding the accused product[s] but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment."). Literal infringement requires that each and every claim limitation appear in an accused product. *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).

C.    Patent Invalidity

An issued patent is presumed valid. 35 U.S.C. § 282. Invalidity must be proven by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).

A patent claim may be invalid as "anticipated" if the patented invention was disclosed in a prior art reference more than one year prior to the patent claim's effective filing date. *See* 35

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

U.S.C. § 102.[2]  Invalidity on the basis of anticipation "requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008).  Anticipation is a question of fact, but "it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

>    D.    Motion to Stay

   "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 252 (1936)).  District courts have long considered three factors in deciding whether to grant a stay of district court proceedings until the completion of co-pending patent office proceedings, including reexamination proceedings:

>    1. whether discovery is complete and whether a trial date has been set;

>    2. whether a stay will simplify the issues in question and trial of the case; and

>    3. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-1153 VAP (SPx), 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015) (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013)); *see also ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994).

   Ultimately, courts consider the "totality of the circumstances" in evaluating whether a stay is proper. *Wonderland Nursery Goods*, 2015 WL 1809309, at *2 ("While the case law enumerates several general considerations that are helpful in determining whether to order a stay, ultimately 'the totality of the circumstances governs.'" (quoting *Universal Elecs.*, 943 F. Supp. 2d at 1031)).

---

[2] Because the '693 Patent was filed before March 16, 2013, pre-America Invents Act ("AIA"), 35 U.S.C. § 102 applies.  *See* M.P.E.P. § 2159.01.  Statutory citations in this Order refer to the earlier version of the law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

III.    Discussion

A.    Defendants' Motion for Partial Summary Judgment

Defendants' summary judgment motion requests a determination as a matter of law that the Asserted Claims are invalid under § 102(b), that Defendants' redesigned bipod products do not infringe the Asserted Claims, and that Plaintiffs are not entitled to damages before March 14, 2019 under 35 U.S.C. § 287.  *See Defs.' MSJ*.  The Court addresses each argument below.

*i.    Invalidity of the Asserted Claims of the '693 Patent*

Defendants argue that the Asserted Claims are invalid as anticipated by Plaintiffs' sale of their Atlas Bipod Line Bar products before August 26, 2011, under § 102(b).  *See Defs.' MSJ* 12:24–23:9.

According to Defendants, Plaintiffs bear the burden of proving the '693 Patent is entitled to a priority date before August 26, 2011 because the '693 Patent claims priority to a continuation-in-part ("CIP") application filed on August 26, 2011, and the PTO never determined the priority date for the '693 Patent.  *See id*. 13:18–14:18 (citing *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1302–06 (Fed. Cir. 2008)).  Defendants assert that the Court construed the term "plurality of recesses" to encompass Figure 3A of the '693 Patent, which was added to the specification in August 26, 2011, with the CIP application.  *See id*. 14:19–15:19 (citing Dkt. # 37 at 22:12–20; Dkt. # 40 at 10:21–22; *Markman Order* at 10; Dkts # 63-10–63-12).  Thus, Defendants argue that the '693 Patent's earliest priority date must be August 26, 2011.  *See id*.

Defendants also argue that the '693 Patent cannot claim priority to the Provisional Application.  Specifically, Defendants aver that the device disclosed in the Provisional Application lacks the claimed "leg mount assembly including a pivot connection that is biased in place[,]" as recited in Claim 1 of the '693 Patent.  *See id*. 15:20–18:22.  As Defendants assert, the claimed "pivot connection" is "biased in place" using a spring, whereas the device in the Provisional Application uses "an ***unbiased*** pivot connection that comprises 'a common fastener.'"  *See id*. (emphasis in original) (citing '693 Patent at 5:21–36, Figs 8, 9D; *Provisional Application* at 2, 4, Figs. 1, 6).

Finally, Defendants argue that there is no dispute that Plaintiffs' "Atlas Bipods" embody the Asserted Claims and were sold or offered to sale over a year before August 26, 2011.  *See id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

at 19:1–23:9.

Plaintiffs respond that the Court should reject Defendants' on-sale bar argument and grant summary judgment in Plaintiffs' favor on this issue *sua sponte*. *See Opp. to Defs.' MSJ* 17:5–8. Plaintiffs argue that Defendants bear the burden of proving that the '693 Patent is not entitled to the filing date of the Provisional Application, May 31, 2005, because that date "is shown on the face of the '693 Patent[.]" *See id*. 17:18–18:9 (citing '693 Patent at 2). Plaintiffs further assert that the Provisional Application "sufficiently discloses a 'plurality of recesses.'" *Id*. 18:11–19:2 (citing *Provisional Application* at 2–4). According to Plaintiffs, the Court did not broaden the scope of the term "plurality of recesses" specifically to include Figure 3A, but instead found that Defendants' construction was impermissibly narrow because it would read out the disclosed embodiment in Figure 3A. *See id*. 19:12–24 (citing *Markman Order* at 10). Thus, Plaintiffs argue that the Court should hold that the Provisional Application discloses "a plurality of recesses" as a matter of law. *See id*. 19:25–20:13.

Additionally, Plaintiffs argue that the Provisional Application adequately supports the claimed "'leg mount assembly including a pivot connection that is biased in place[.]'" *Id*. 20:15–18. As Plaintiffs highlight, "the Court did not construe 'leg mount assembly,' 'pivot connection,' or 'biased in place.'" *Id*. 20:18–19. Plaintiffs assert that Defendants seek a construction narrowing the scope of the term "biased in place" to "spring biased in place." *See id*. 20:25–21:9. According to Plaintiffs, nothing in Claim 1 requires the "'leg mount assembly and pivot connection' to be 'spring-biased in place,'" and Defendants baselessly seek to limit the term to "the only embodiment disclosed in the '693 Patent . . . , i.e., spring-based leg fastener." *Id*. 20:28–8 (citing *Defs.' MSJ* at 17). Plaintiffs argue that the Provisional Application discloses a "a leg mount assembly (i.e., the leg fastener 62 and the positioning plate 8)," where "[t]he leg fastener is biased in place because it does not, itself, move." *Id*. 21:10–22:3. Thus, Plaintiffs assert that the '693 Patent is entitled to the priority date of the Provisional Application. *See id*. 22:4–13.

Finally, because there is no dispute that Plaintiffs did not sell or offer to sell the Atlas Bipod products before May 31, 2005, Plaintiffs argue that the Court should grant summary judgment on this issue in their favor. *See id*. 22:15–24:3.

Defendants reply that Plaintiffs do not cite any authority for their assertion that Defendants bear the burden regarding the earliest priority date entitled to the '693 Patent. *See Reply ISO Defs.' MSJ* 7:3–11. According to Defendants, Plaintiffs concede that they sold the Atlas Bipod products before August 26, 2010 and that those products embody the Asserted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|----------|------------------------|------|----------------|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

Claims. *See id*. 7:13–20. Defendants also assert that the Provisional Application discloses neither Figure 3A nor "a pivot connection that is biased in place." *See id*. 8:19–10:8. As Defendants aver, "Plaintiffs' explanation that leg fastener 62 is 'biased in place because it does not, itself, move' fixates on the term 'in place' and entirely reads out the term 'biased.'" *Id*. 10:5–7.

The Court finds that Plaintiffs bear the burden of proving that the '693 Patent is entitled to a priority date before the filing date of the CIP application. As the Federal Circuit explained in *Dynamic Drinkware, LLC v. National Graphics, Inc*., once the party bearing the burden of proving invalidity presents evidence of anticipating prior art, the burden shifts to the opposing party to prove entitlement to an earlier priority date, such as to the filing date of a related nonprovisional application or provisional application. 800 F.3d 1375, 1378–81 (Fed. Cir. 2015). Plaintiffs do not dispute that they sold or offered for sale products embodying the Asserted Claims, i.e., the Atlas Bipod products, over a year before August 26, 2011. *See Opp. to Defs.' MSJ* 22:21 ("It is undisputed that the Atlas Bipods were on sale prior to August 26, 2011."). Defendants thus satisfied their initial burden of producing evidence of an anticipating prior art reference, shifting the burden to Plaintiffs to prove entitlement to an earlier priority date.

Plaintiffs assert that Defendants still bear the burden of proving that the '693 Patent is not entitled to the priority date of the Provisional Application because the '693 Patent claims priority to the Provisional Application on its face. *See Opp. to Defs.' MSJ* 17:18–18:9. Plaintiffs offer no legal support for that assertion, however, and the Federal Circuit's decision in *Dynamic Drinkware* holds otherwise. Accordingly, Plaintiffs bear the burden of proving that the '693 Patent is entitled to a priority date before August 26, 2011.

Nevertheless, the Court finds that the CIP application that led to the '693 Patent did not add new matter that changed the scope of the term "plurality of recesses." A CIP application "receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1 [sic], including the written description requirement, with respect to that claim." *Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1326 (Fed. Cir. 2008). For a claim in a later CIP application to be entitled to the priority date of a parent application, the parent application must describe the later-claimed invention "in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *PowerOasis*, 522 F.3d at 1306 (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

During claim construction, Defendants asserted that the term "plurality of recesses" was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

limited to "a setback surface with two or more communicating (interconnected) positions channels," whereas Plaintiffs asserted that the term meant "multiple locations of indentation relative to a surface." *See Markman Order* at 8. Defendants argued that Plaintiffs' construction was "impermissibly broad." *See* Dkt. # 39 at 11:20. The Court chose Plaintiffs' construction, noting that it could not determine the difference in scope between the parties' constructions. *See id.* at 10. In other words, the Court did not understand Defendants' position. For instance, Defendants argued that there was a substantive distinction between the claimed "plurality of recesses" and the phrase "a recess pattern" in the specification but did not explain how the two were different. *See* Dkt. # 38 at 23:9–24:11. To the extent Defendants' construction excluded the embodiment disclosed in Figure 3A, however, the Court concluded that Defendants had not shown a clear intent to disavow the scope of the term in the intrinsic evidence. *See Markman Order* at 10–11.[3]

Even if the '693 Patent did not include Figure 3A, the intrinsic evidence still would not support disavowing the embodiment disclosed in Figure 3A from the scope of the term "plurality of recesses." *See id*. Defendants even concede in their motion that "the '693 Patent treats Fig. 3A the same as the remaining figures (including Fig. 6A), and nowhere teaches—or even suggests—that the embodiment of Fig. 3A operates differently than any other embodiment of the patent." *Defs.' MSJ* 18 n.3. Although the CIP application may have included the first disclosure of the exemplary embodiment depicted in Figure 3A, Figure 3A did not substantively change the scope of the term "plurality of recesses" to constitute "new matter." The '693 Patent may therefore be entitled to a priority date before August 26, 2011.

The Court agrees with Defendants that the '693 Patent cannot claim priority to the Provisional Application, however, because the Provisional Application does not disclose a "leg mount assembly including a pivot connection that is biased in place," as required by Claim 1. The parties' dispute depends on the proper construction of the term "biased in place." The intrinsic evidence shows that the term "biased" requires a spring. The language of Claim 1 distinguishes between connections that are "biased in place," "attached," "mounted to," and "releasably secured within." '693 Patent, Claim 1. Additionally, Claim 13 recites, inter alia, "a fastener adjustably securing the ball member [of a clamp assembly of the first portion] within the socket [of a pivot body of the second portion]." *Id*., Claim 13; *see also id*. at 3:51–53 ("The ball and socket joint of clamp body **14** and pivot body **60** is secured by a fastener **32** which is common to both clamp body **14** and pivot body **60**."). Thus, the claims specifically distinguish

---

[3] To the extent Defendants argue that the term "channel" is narrower than the word "indentation," the intrinsic evidence does not support Defendants' construction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

between "biased" connections and "adjustably secur[ed]" connections with a fastener.

Further, the specification equates "biasing" with the use of a spring. *See id*. at 5:33–36 ("Inside leg **102** further includes an internal spring **106**B for biasing between inside leg **102** and leg fastener **106**A thus biasing inside **102** toward an extended position."); *id*. at 5:48–54 ("An operator, by applying pressure against the spring biasing of inside leg **102** may pull a position feature **110** out of engagement with one of the position channels and then rotate inside leg **102** to another position and then release inside leg **102** to cause engagement of position feature **110** with another selected position channel."); *id*. at 5:60–65 ("Ball bearing collar assembly **122** includes a collar **124** which is spring biased by a spring **142** toward an extended position. … When collar **124** is biased in the extended position by spring **142** …"). Thus, the intrinsic evidence shows that a person of ordinary skill in the art would understand the term "biased" to require a spring.

Under this construction, there is no dispute that the Provisional Application does not disclose a "leg mount assembly including a pivot connection that is biased in place." Instead of using a spring to bias the pivot connection in place, the Provisional Application discloses the use of a "common fastener 62" without a spring at the "pivot connection" between the leg mount assembly and leg. *See Provisional Application* at 2, Figs. 1, 6. The Provisional Application further discloses a "positioning pin 63" biased against "pin spring 65, which moves with [the leg] as the leg rotates to different positions[.]" *See Defs.' MSJ* 17–18 (citing *Provisional Application* at 4, Figs. 1, 6). Thus, the spring in the Provisional Application is used to bias the legs into the various positions rather than to bias the "pivot connection" in place. Because Plaintiffs rest their priority claim to the Provisional Application on their construction of the term "biased in place," the Court finds that Plaintiffs have not shown that '693 Patent is entitled to the priority date of the Provisional Application.

Neither party explicitly addresses the scenario where the '693 Patent may be entitled to a priority date before August 26, 2011 but is not entitled to the priority date of the Provisional Application. Thus, the Court does not address this scenario and its impact on Defendants' invalidity defense. For these reasons, the Court **DENIES** Defendants' Motion for Summary Judgment as to invalidity of the '693 Patent and declines Plaintiffs' request that the Court grant summary judgment in Plaintiffs' favor *sua sponte*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

ii.     *Non-infringement of the Redesigned Bipod Products*

Defendants argue that their redesigned bipod products do not infringe the Asserted Claims of the '693 Patent.  Specifically, Defendants assert that the redesigned bipod products do not infringe Claim 1 for three reasons: "(1) the Redesigned Bipods do not have recesses at both forward and rearward locations; (2) the Redesigned Bipods do not have a corresponding structure that can mate with, be releasably secured within, and be positioned in recesses at both forward and rearward locations; and (3) the Redesigned Bipods do not permit the legs to be stowed in both forward and rearward manners." *Defs.' MSJ* 3:16–21.

Defendants' three non-infringement arguments are all related.  Specifically, Defendants argue that the redesigned bipod products cannot infringe the Asserted Claims because Defendants removed one of the notches in the resigned bipod products, meaning the legs can be stowed in either the forward or rearward position, but not both.  *See Defs.' MSJ* 3:24–12:23.  After reviewing Defendants' motion, the Court finds that there is no genuine dispute that the redesigned bipod products have a "plurality of recesses" and "a corresponding structure that can mate with and be releasably secured within one of the plurality of recesses," with the exception of the removed rearward or forward recess.  Accordingly, the Court focuses on Defendants' arguments regarding the limitation "the corresponding structure can be positioned in one of the plurality of recesses so as to permit each leg to be independently stowable in a rearward manner adjacent the weapon, stowable in a forward manner adjacent the weapon, and adjustably locked in any one of a plurality of positions there between."

The Court construed the term "stowable" to mean "lockable or releasably securable."  *See Markman Order* at 8.  In doing so, the Court rejected Plaintiffs' construction of "capable of staying in place without requiring it to be locked against movement," finding that the intrinsic evidence confirmed that the leg needed to be locked in place in order to be stowable and in the forward and rearward positions.  *See id*. at 7–8.  The Court also construed the term "plurality of recesses" to mean "multiple locations of indentation relative to a surface."  *See id*. at 11.  Additionally, the Court declined to construe the term "corresponding structure."  *See id*. at 15.

The Court agrees with Defendants that the redesigned bipod products do not satisfy the limitation "the corresponding structure can be positioned in one of the plurality of recesses so as to permit each leg to be independently stowable in a rearward manner adjacent the weapon [and] stowable in a forward manner adjacent the weapon." There is no genuine dispute that the redesigned bipod products lack a "recess" for locking or releasable securing the leg into both the rearward and forward position.  Plaintiffs' argument as to why the redesigned bipod products

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

satisfy this limitation is based on a misinterpretation of the Court's construction of the term "stowable." Specifically, Plaintiffs argue that the construction "lockable or releasably securable" delineates two distinct ways of stowing the legs, locking and releasably securing, but does not explain how the two are different. *See Opp. to Defs.' MSJ* 13:9–17:2. The Court disagrees with Plaintiffs that these terms are distinct and finds that the legs on the redesigned bipod products are not "stowable" in both the rearward and forward positions.

Plaintiffs also argue that position 5 of the redesigned bipod products, shown in the below figure first produced in Plaintiffs' opposition brief, is a "recess" because it is an indentation relative to the surface formed by the circular arc of dashed red lines below:



*See Opp. to Defs.' MSJ* 8:20–9:2 (citing Dkt. # 63-5 ("*Kaempe Rpt.*"), ¶ 62). Plaintiffs' expert, Mr. Tonny Kaempe, opined, however, that a similar flat surface of U.S. Patent No. 2,420,267 to Sefried ("Sefried"), seen in the annotated figure below originally produced in Defendants' motion, would not qualify as a "recess":

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |



*See Defs.' MSJ* 6:18–7:22 (citing Dkt. # 63-7 ("*Kaempe Depo. Tr.*") at 54:14–21, 59:24–60:13). Kaempe also opined that a similar flat surface in U.S. Patent No. 2,489,283 to Garand ("Garand") did not qualify as a "recess." *See id*. at 8:5–24 (citing *Kaempe Depo. Tr*. at 136:10–16). Plaintiffs argue that "Sefried and Garand are applicable only to the extent invalidity is concerned – not infringement[,]" *Opp. to Defs.' MSJ* 9:15–16, but "[i]t is axiomatic that claims are construed the same way for both invalidity and infringement." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). Thus, Plaintiffs' inconsistent infringement and invalidity arguments also demonstrate that the redesigned bipod products do not have the requisite "recesses" for locking the legs into both the rearward and forward positions.

Even assuming position 5 is a "recess," the "corresponding structure" of the redesigned bipod products cannot "mate" with and be "releasably secured within" the "recess" of position 5 to lock the legs into position 5. Plaintiffs argue that the word "mate" means "interact." *See Opp. to Defs.' MSJ* 11:4–8 (citing *Kaempe Rpt.* ¶ 48). In finding that the term "corresponding structure" was not governed by 35 U.S.C. § 112(f), however, the Court reasoned that the shape of the "recesses" and "corresponding structure" had to "correspond" with or match the "recess" in some way to "mate" with one another. *See Markman Order* at 15. Plaintiffs' construction equating "mate" with "interact" effectively reads out these limitations, as any "structure" could "correspond" or "mate" with any "recess" so long as they "interact" under Plaintiffs' construction. Kaempe even opined that "the corresponding structure in the Accused Models

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

does not need to be 'within' a recess in order to be considered 'mating,'" but the express language of Claim 1 requires that the "corresponding structure" be "releasably secured *within*" the "recess." '693 Patent, Claim 1 (emphasis added); *Opp. to Defs.' MSJ* 12:13–15 (citing *Kaempe Depo. Tr.* at 72:16–23). Thus, Plaintiffs' construction is impermissibly broad and Plaintiffs' infringement theory fails as a matter of law.

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to non-infringement of the redesigned bipod products.

   *iii.* *Pre-Suit Damages*

Defendants assert that Plaintiffs are not entitled to damages prior to March 14, 2019 under § 287(a). *See Defs.' MSJ* 23:12–25:22. Section 287(a) of the Patent Act requires any patented article to be marked with a patent number to provide notice to the public that the article is patented. § 287(a). If a patentee fails to mark its product, infringement damages are unavailable unless the patentee provides "proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id*. "The duty of alleging and the burden of proving either [actual notice or constructive notice through marking] is upon the plaintiff." *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894); *see Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1446–47 (Fed. Cir. 1998). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co*., 24 F.3d 178, 187 (Fed. Cir. 1994).

Defendants argue that there is no genuine dispute that Plaintiffs sold products that practice the Asserted Claims, yet never marked those products with the '693 Patent. *See Defs.' MSJ* 24:8–20 (citing Dkt. # 63-14 at 7; Dkt. # 63-15 at 4). Thus, Defendants assert that Plaintiffs may only recover damages from the time they gave Defendants actual notice of infringement. *See id*. According to Defendants, the earliest date Plaintiffs provided actual notice was March 14, 2019, when Plaintiffs sent Defendants a letter alleging infringement of the '693 Patent. *See id*. 24:21–25:19. Defendants assert that although Plaintiffs produced a letter and email from 2016 in response to Defendants' request for production asking for all documents Plaintiffs contend constituted actual notice, neither was sufficient to constitute actual notice. *See id*. Specifically, Defendants argue that the 2016 letter and email never accused Defendants or their products of infringing the '693 Patent despite listing the '693 Patent. *See id*. (citing Dkt # 63-17 ("*2016 Correspondence*")) (sealed version at Dkt. # 68-2) at B&T-000355–0358).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

Plaintiffs respond that they provided Defendants with actual notice "at least as early as January 27, 2016," when Plaintiffs called Defendants to inform them that "certain of Accu-Tac's models were infringing Plaintiffs' patents." *Opp. to Defs.' MSJ* 24:6–26 (citing Dkt. # 71-1 ("*Beltz Decl.*") (sealed version at Dkt. # 73-3), ¶ 2). Plaintiffs submitted a declaration from their employee who was on the call, Mr. Kasey Beltz, and assert that the contents of the call are confirmed in the 2016 email, which directly references the call. *See id.* (citing *Beltz Decl.*; *2016 Correspondence* at B&T-000356).

In reply, Defendants request that the Court exclude the Beltz declaration because they assert that Plaintiffs never disclosed the contents of Beltz's phone call during discovery. *See Reply ISO Defs.' MSJ* 11:24–12:18. Defendants assert that they specifically asked Plaintiffs in an interrogatory to "[]identify and fully describe in detail the basis for Your contention that Plaintiffs charged Defendants with infringement of the Asserted Patents in 2016, including describing in detail the basis for how any Communication in 2016 constitutes a charge of infringement sufficient to place Defendants on notice under 35 U.S.C. § 287." *Id.* (citing Dkt. # 80-4 at 6:11–15). According to Defendants, Plaintiffs "wholly failed to respond," but Defendants do not provide Plaintiffs' actual responses. *Id.*

The Court finds that Plaintiffs have not satisfied their burden of proving that they gave Defendants actual notice of infringement prior to March 14, 2019. The 2016 email and letter do not specifically identify any of Defendants' products. Plaintiffs only rely on the declaration of their own employee Beltz to describe the contents of the phone call in which Plaintiffs allegedly identified the specific products accused of infringing. To the extent Plaintiffs did not disclose the contents of the 2016 phone call in response to Defendants' interrogatory, the Court will exclude the Beltz declaration. Further, the Beltz declaration only states that Beltz identified "the bipods Accu-Tac was selling" on the phone call, which is insufficient to give notice of the specific products accused of infringing. *See Beltz Decl.* ¶ 2. The Beltz declaration is thus insufficient to create a genuine dispute of material fact that Defendants had actual notice of infringement of the '693 Patent as early as 2016.

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment precluding Plaintiffs from recovering damages for infringement prior to March 14, 2019.

      B.    <u>Plaintiffs' Motion for Summary Judgment of Validity</u>

                *i.*    *Summary of the Parties' Arguments*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

Plaintiffs' summary judgment motion requests a determination as a matter of law that the '693 Patent is valid. *See generally Pls.' MSJ*. Specifically, Plaintiffs assert that the combination of the prior art Barrett Model 82A1 "semi-automatic, recoil operated rifle" ("the M82 Reference"), Garand, and U.S. Patent No. 5,194,678 to Kramer ("Kramer") does not anticipate or render obvious the Asserted Claims under 35 U.S.C. §§ 102 and 103. *See generally id*. According to Plaintiffs, "[t]he evidence Defendants have submitted in support of their invalidity argument is: (i) based on an incorrect interpretation of the claim language; (ii) based on an incorrect characterization of the prior art; and (iii) based on an incorrect application of the prior art." *Id*. 9:17–20.

Plaintiffs argue that the M82 Reference, the primary reference in Defendants' obviousness combination, does not teach two limitations of Claim 1 of the '693 Patent. *See id*. 10:4–16. First, Plaintiffs assert that the M82 Reference does not have "a connector having a first portion . . . and a second portion" because Defendants identify the "bipod yoke 22" of the M82 Reference for both the "first portion" and "second portion." *See id*. 12:9–15:6, 18:16–19:9. As Plaintiffs argue, the "first portion" and "second portion" must be "two distinct [or separate] components," so the "bipod yolk 22" cannot satisfy both limitations. *See id*.

Second, Plaintiffs aver that the M82 Reference does not have "a pivot support between the first and second portions permitting relative movement there between at least about a generally longitudinal axis." *See id*. 10:17–12:8, 13:15–14:26, 19:10–20:15. Plaintiffs argue that Claim 1 "requires the <u>first portion</u> of the connector to be able to rotate along a generally longitudinal axis relative to the <u>second portion</u>." *Id*. 11:4–7 (emphasis in original). According to Plaintiffs, "[t]his interpretation was formalized as a matter of law during the *Markman* process." *Id*. 12:3–4. Thus, Plaintiffs argue that the M82 Reference cannot satisfy this limitation because it only "teaches relative movement *between the bipod device and the rifle*." *Id*. 10:23–25 (emphasis in original). Additionally, Plaintiffs argue that the identified "pivot support" of the M82 Reference is not a single component as required and is "<u>not</u> used to join the first and second portions[.]" *Id*. 20:10–11 (emphasis in original).

Plaintiffs argue that the Garand and Kramer references fail to teach certain limitations in the Asserted Claims as well. Specifically, Plaintiffs argue that the device in the Garand reference lacks "legs" that are "independently stowable in a rearward manner adjacent the weapon, stowable in a forward manner adjacent the weapon," as recited in Claim 1, because Garand does not disclose "independent leg rotation" or "a forward adjacent position." *See id*. 15:11–16:27, 20:16–21:2, 23:20–25. Further, Plaintiffs assert that the device in the Kramer reference teaches "independent leg 'rotation' through a ball and socket joint between the legs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

and the leg junction," instead of "about a surface or a pattern of recesses, as is required by the '693 Patent." *Id*. 21:3–28. Therefore, Plaintiffs contend that Kramer cannot satisfy Claim 2, which recites "wherein; one of the plurality of positions is an angled forward position." *See id*.; '693 Patent, Claim 2.

Finally, Plaintiffs argue that Defendants' evidence of a teaching, suggestion, or motivation to combine is insufficient as a matter of law because it is based on "hindsight reverse engineering" and does not describe the "'preload' benefits in the context of an angled forward position." *See id*. 24:8–25:14.

Defendants respond that the Court should deny Plaintiffs' motion solely on the ground that it seeks "a blanket declaration of 'validity'" for the '693 Patent. *Opp. to Pls.' MSJ* 1:5–8. Additionally, Defendants argue that "Plaintiffs base their validity arguments entirely on claim constructions that they present now for the first time, and which Plaintiffs have unilaterally adopted for purposes of those validity arguments." *Id*. 2:22–24. "Specifically, Plaintiffs present and base their validity arguments on brand new constructions for the claim 1 terms 'portion,' 'permitting relative movement there between,' and 'pivot support'—of which, Plaintiffs failed even to identify the first two as requiring construction during the *Markman* process." *Id*. 3:8–15 (citing *Apple, Inc. v. Samsung Elecs. Co*., No. 12-CV-00630-LHK, 2014 WL 252045, at *10 (N.D. Cal. Jan. 21, 2014)). Defendants present the following table summarizing the parties' claim construction disputes in Plaintiffs' motion:

| Term (Claim 1) | Defendants' Construction | Plaintiffs' Construction |
|---|---|---|
| portion | "a part of a whole" | "a separate and distinct component" |
| permitting relative movement there between | "allowing relative motion (e.g., pivoting) at an intermediate location" | "allowing the first portion to pivot with respect to the second portion" |
| pivot support | "one or more structural components that supports a pivotal connection" | "a singular structure that supports a pivotal connection and connects/couples the first portion to the second portion" |

*Id*. 4:15–24. Defendants argue that the Court should construe each term according to Defendants' proposed constructions or permit their expert to submit a supplemental invalidity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|----------|------------------------|------|----------------|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

report addressing the new constructions.  *See id*. 4:25–5:17.

For the term "portion," Defendants assert that Plaintiffs and Kaempe erroneously conclude that the claimed "first portion" and "second portion" must be "separate and distinct." *See id*. 5:19–22.  According to Defendants, the Federal Circuit and Kaempe found that Defendants' proposed construction, "part of a whole," is the plain and ordinary meaning of the term "portion."  *See id*. 6:23–7:12 (citing *Rexnord Corp. v. Laitram Corp*., 274 F.3d 1336, 1344 (Fed. Cir. 2001); *Kaempe Depo. Tr.* at 102:16–22).  Defendants also argue that "the specification's general use of the term 'portion' in the '693 Patent's specification is consistent with the plain and ordinary meaning that a 'portion' may be separate or integral."  *Id*. 7:13–8:11 (citing '693 Patent at 1:63–65, 3:47–48, 5:22–26, 5:28–29, Figs. 6A, 7A, 8).

For the term "permitting relative movement there between," Defendants assert that Plaintiffs incorrectly "attempt to read into the claim language the requirement that the first portion must move relative to the second portion."  *See id*. 8:18–24.  Defendants argue that instead, "the actual claim language merely requires the pivot support to permit any (unidentified) component to perform relative movement (e.g., pivoting) at an intermediate location between the first and second portion about a generally longitudinal axis."  *Id*. 8:27–9:2.  According to Defendants, "the '693 Patent's specification supports both Plaintiffs' and Defendants' theories of 'permitting relative movement there between.'"  *Id*. 9:26–10:10 (citing '693 Patent at 3:32–31, 3:63–64, 6:12–16).  Defendants also argue that Plaintiffs' own statements in their opening claim construction brief show the ambiguity of the scope of the term.  *See id*. 10:11–26.

For the term "pivot support," Defendants assert that Plaintiffs seek to introduce two new limitations into the term: 1) the "pivot support" must be "a singular structure," and 2) the "pivot support" must connect or couple the first portion and second portion.  *See id*. 11:4–23.  Defendants argue that both the claim language and Kaempe's own testimony show that Plaintiff's construction is unsupported.  *See id*. 11:24–12:8 (citing *Kaempe Depo. Tr.* at 123:7–17).

Defendants argue that there is a genuine issue of material fact as to whether the Asserted Claims are anticipated or obvious under either parties' proposed constructions.  *See id*. 12:17–13:10.  For the M82 Reference, Defendants assert that there is no dispute that the M82 Reference meets both the "a connector having a first portion . . . and a second portion" and "a pivot support between the first and second portions permitting relative movement there between at least about a generally longitudinal axis" limitations under Defendants' constructions.  *See id*. 14:22–17:27.  Defendants further argue that they could easily relabel the parts of the M82

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

Reference bipod to meet the limitations under Plaintiffs' construction, too. *See id*. 18:3–19:27.

Defendants also contend that Plaintiffs' arguments regarding the Garand and Kramer references are flawed. Defendants aver that although Garand does not teach legs that are stowable in both a rearward and forward position, Garand does teach a plurality of operating positions between a rearward and forward position, which in combination with the M82 Reference renders Claim 1 of the '693 Patent obvious. *See id*. 20:13–22:28. Similarly, Defendants assert that they do not rely on Kramer — and U.S. Patent No. 5,029,407 to Kirkpatrick ("Kirkpatrick"), not mentioned in Plaintiffs' motion — to teach the "plurality of recesses" limitation; instead, Defendants rely on those references to teach that the legs may be stowable in the "angled forward position" as required by Claim 2. *See id*. 23:2–24:10. Thus, Defendants assert that the combination of those references with the M82 Reference would render Claim 2 obvious. *See id*.

Finally, Defendants argue that they provided sufficient evidence of reasons to combine the asserted prior art. *See id*. 24:15–25:23. Specifically, Defendants aver that their expert, Dr. Joshua M. Keena, provided this evidence in his expert report, which Plaintiffs do not address and summarily dismiss. *See id*.

In reply, Plaintiffs argue that they do not seek new constructions but rather apply the plain and ordinary meanings of the terms. *See Reply ISO Pls.' MSJ* 2:5–22, 3:21–4:13. Citing their own infringement contentions and Kaempe's infringement opinions, Plaintiffs assert that the plain and ordinary meaning of the word "portion" requires each portion to be discrete. *See id*. 4:15–5:23 (citing *Compl*. at 8; Dkt. # 78-3 6:16–7:10 (citing *Kaempe Rpt*. ¶¶ 43–45). According to Plaintiffs, the use of the claim language "first and second portions *of the connector* to be coupled by a pivot support . . . which permits *relative* movement *there between* the first and second portions" requires the two portions to be "separated so as to be joined by, or include a pivot supporting mechanism." *Id*. 5:2–12 (emphasis in original). Plaintiffs also cite their opening claim construction brief, which referenced two embodiments in the specification that allegedly support their proposed construction. *See id*. 5:24–5:15 (citing Dkt. # 37 at 17, 18).

For the term "permitting relative movement there between," Plaintiffs assert, "[i]n clear and unambiguous terms, claim 1 ___**absolutely**___ requires specific components to be: (1) connected via the pivot support; (2) in order that those specific components may move relative to one another." *Id*. 8:2–7 (emphasis in original). To Plaintiffs, the claim language shows that "it is a ___**necessity**___ that those first and second portions move relative to one another; i.e., there between, i.e., between the two specified portions," and Defendants' construction reads out the word

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

"relative." *Id*. 8:11–22 (emphasis in original). Plaintiffs also argue that Defendants' references to the specification refer to the invention as a whole, and not to the relevant limitations. *See id*. 10:5–19.

For the term "pivot support," Plaintiffs again rely on the claim language to support their construction, stressing the word "between." *See id*. 8:23–10:4, 10:21–12:2.

Plaintiffs assert that, accepting either parties' constructions, there is no dispute that Defendants' prior art combination does not render Claim 1 obvious. *See id*. 12:4–7. Specifically, Plaintiffs contend that there is no dispute that the M82 reference does not have a "pivot support *between* the first portion and second portion," which also "permit[s] *relative* motion *there between*." *See id*. 7:11–16 (emphasis in original). According to Plaintiffs, the "pivot support" of the M82 Reference is not "between" the first and second portions because it "cannot physically exist 'between' the two things that are actually one, provided that the purpose is to permit relative movement there between them." *See id*. 9:15–22.

Additionally, Plaintiffs argue, "were the Court were to accept Defendants' argument that the pivot support need only be ***spatially*** 'between' (i.e., in the middle of) the first ['B'] and second ['C'] portions, Defendants only show the pivot support [I] as *spatially* between the alleged second ['C'] portions." *Id*. 9:22–26 (emphasis in original). Plaintiffs contend that the "pivot support" is only "injected *into* the first portion, it is not *in the middle* of two portions, *relative to one another*." *Id*. 9:26–10:1. Thus, Plaintiffs assert that "there is no structure in the [M82 Reference] that places the alleged pivot support [i] in a location between the first ['B'] and second ['C'] portions, or permits them to move relative to one another." *Id*. 11:22–25.[4]

Finally, Plaintiffs argue that Defendants should not be allowed to submit a supplemental report addressing any new constructions because any new opinions would conflict with Dr. Keena's previous opinions. *See id*. 13:4–24.

  *ii. Analysis*

The Court agrees with Defendants that the parties' briefing on Plaintiffs' motion presents clear disputes about the plain and ordinary meaning of the terms "portion," "permitting relative

---

[4] Plaintiffs also assert for the first time in their reply brief that the alleged pivot support and not the first portion of the M82 Reference mounts to the rifle. *See Reply ISO Pls.' MSJ* 12:17–22. The Court does not consider this argument as it was not raised in Plaintiffs' motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

movement there between," and "pivot support." Accordingly, the Court must construe those terms to resolve Plaintiffs' motion. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008) (holding that courts have a duty resolve claim construction disputes where "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate [because] a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute"). The Court addresses each term then turns to Plaintiffs' arguments.

> a.      *"portion"*

The Court agrees with Defendants that the plain and ordinary meaning of the word "portion" is "part of a whole," and the recited "first portion" and "second portion" need not be separate and distinct components. Claim 1 recites, inter alia, "a connector having a first portion mountable to the weapon and a second portion on which each of two legs are attached on opposing sides thereof, respectively." '693 Patent, Claim 1. The first and second portions are both part of the "connector," suggesting that they need not be separate components. The specification also uses the word "portion" to refer to a part of a whole. For example, the specification discloses that "FIG. 1 is a perspective view of the bipod firearm support shown supporting the *forward portion* of a firearm stock having a mounting." *Id*. at 1:63–65 (emphasis added); *see also id*. at 5:28–29 ("Inside leg **102** includes a leg portion **103** and a head portion **104**."). Accordingly, the Court construes the term "portion" to mean "part of a whole."

> b.      *"permitting relative movement there between"*

The Court agrees with Plaintiffs that the term "permitting relative movement there between" means "allowing the first portion to pivot with respect to the second portion." Claim 1 recites, inter alia, "the connector including a pivot support between the first and second portions permitting relative movement there between at least about a generally longitudinal axis." '693 Patent, Claim 1. The specification discloses a "[c]lamp portion **12** [] mechanically associated with pivot body **60** such that clamp portion **12** may adjustably pivot . . . with respect to pivot body **60**" in a vertical and "longitudinal" direction. *Id*. at 2:64–65, 3:21–28. The specification indicates that the "clamp portion **12**" is like the "first portion" in Claim 1 and the "pivot body **60**" is like the "second portion." *See id*. Later, the specification discloses "pivoting movement of clamp portion **12** relative to pivot body **60** about longitudinal axis L." *See id*. at 4:1–3. This shows that the phrase "relative movement there between" means moving the "first portion" or "clamp portion **12**" relative to the "second portion" or "pivot body **60**," or between the first and second portions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|----------|----------------------|------|---------------|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

As Defendants emphasize, the specification also discloses, "[t]his capability allows a firearm marksman to pivot a firearm about a vertical and a longitudinal axes for aiming the firearm while leg assemblies **100** remain relatively stationary." *Id*. at 3:28–31. Defendants assert that this shows that the movement may be between the firearm relative to the legs. *See Opp. to Pls.' MSJ* 9:5–9, 10:4–10. Nevertheless, Claim 1 and the specification disclose that the firearm is mounted to the first portion or "clamp portion **12**," whereas the legs are attached to the second portion or "pivot body **60**." Thus, moving the firearm relative to the legs would necessarily mean moving the first portion relative to the second portion.

Accordingly, the Court construes the term "permitting relative movement there between" to mean "allowing the first portion to pivot with respect to the second portion."

c.   *"pivot support"*

The Court finds that the term "pivot support" means "one or more structural components that support a pivotal connection and connects/couples the first portion to the second portion." The intrinsic evidence shows that the "pivot support" connects or couples the first portion to the second portion. Claim 1 recites, inter alia, "the connector including a pivot support between the first and second portions permitting relative movement there between." '693 Patent, Claim 1. The word "between" suggests that the "pivot support" connects the two portions at least indirectly. Further, as stated above, the term "permitting relative movement there between" means "allowing the first portion to pivot with respect to the second portion." Thus, the "pivot support" between the first and second portions must also allow the first portion to pivot relative to the second portion.

The intrinsic evidence also shows that the "pivot support" may include multiple components. Claim 7 recites "wherein; the pivot support includes a ball and socket joint." *Id*., Claim 7. The specification discloses that the "limited pivoting adjustment between clamp portion **12** and pivot body **60** is accomplished by ball and socket joint between the two[.]" *Id*. at 3:44–50. The specification also discloses that "[t]he ball and socket joint of clamp body **14** and pivot body **60** is secured by a fastener **32** which is common to both clamp body **14** and pivot body **60**." *Id*. at 3:51–53. Thus, the claims and specification show that the "pivot support" may include multiple components.

Accordingly, the Court construes the term "pivot support" to mean "one or more structural components that support a pivotal connection and connects/couples the first portion to the second portion."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

<em>d.   Invalidity Arguments</em>

There is no genuine dispute that the M82 Reference does not satisfy the limitations "pivot support" and "permitting relative movement there between" under Defendants' current theory. Defendants effectively concede as much, stating "Dr. Keena's analysis of [the M82 Reference] would require only a modest relabeling of the M82 bipod to show that it satisfies all three of the newly disputed claim terms." *Opp. to Pls.' MSJ* 18:4–6. Instead, Defendants request that the Court allow them an opportunity to supplement Dr. Keena's invalidity report to relabel the M82 bipod.

Defendants state in their reply brief in support of their motion to stay that they are "willing to stipulate not to challenge the '693 Patent based the grounds and references that the [PTO] found raise [a substantial new question of patentability] in the Order and will be considered in the [ex parte reexamination]" (the "proposed estoppel stipulation"). *See MTS Reply* 2:3–7. Should it still be necessary, however, the Court will permit the parties an opportunity to file supplemental reports following the conclusion of the ex parte reexamination to address the Court's new claim constructions and for Defendants and Dr. Keena to relabel the M82 Reference. The parties agreed to adhere to the Northern District of California's Patent Local Rules ("N.D. Cal. P.L.R.s") in this case, which cite as evidence of good cause to amend contentions "[a] claim construction by the Court different from that proposed by the party seeking amendment[.]" *See* Dkt. # 24 at 1 n.1; N.D. Cal. P.L.R. 3-6. Further, Defendants' revised invalidity theory for the M82 Reference relies on the same components: the bipod yoke 22, the two mounts for the bipod yoke 116, the two bipod shim bushings 19, and the rear lock pin 28. *See* Dkt. # 74-11 ("*M82 Manual*") at 33–35. The only change is that Defendants rely on the mounts 116 and shim bushings 19 for the first portion instead of relying on the bipod yoke 22 for both the first and second portions and the mounts 116, shim bushings 19, and rear lock pin 28 for the "pivot support." Finally, Plaintiffs' arguments for the M82 Reference would not apply to the relabeled M82 Reference, and thus the relabeling would not be futile.

As stated above, there is also a genuine dispute of material fact regarding Defendants' on-sale bar defense. And as Defendants assert, Plaintiffs seek a blanket declaration of validity of the '693 Patent rather than a judgment on Defendants' invalidity defenses specifically. For these reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment of Validity.

C.   <u>Defendants' Motion to Stay Case Pending Ex Parte Reexamination</u>

The Court turns next to Defendants' motion to stay this case pending the outcome of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

ex parte reexamination of the '693 Patent. The PTO's ex parte reexamination order indicates that Accu-Tac's reexamination request raises several substantial new questions of patentability affecting the Asserted Claims of the '693 Patent, among others. *See PTO Order* ¶¶ 1, 18, 27, 32, 39, 49, 60, 65, 77, 89, 94. The Court considers in turn whether each of the three stay factors, followed by the totality of the circumstances, favors a stay pending the PTO's reexamination.

       *i.*     *Stage of the Proceedings*

Under the first factor, the Court considers the progress already made in the case, such as whether discovery is complete, a trial date has been set, and claim construction has occurred. *See Wonderland Nursery Goods*, 2015 WL 1809309, at *2.

Here, the case is no longer in its early stages. Discovery and claim construction are complete, trial is set for April 19, 2022, *see generally* Dkt. # 24, and the Court has resolved the parties' motions for summary judgment. Yet, because trial remains ahead, "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come." *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. July 30, 2015). Plaintiffs argued in their opposition that the first factor weighed heavily against a stay in part because Accu-Tac's "reexamination ha[d] not even been instituted, let alone acted upon," and thus that this case could realistically be completed before the PTO began its reexamination. *MTS Opp.* 10:10–11:10; *see also id.* 11:3–5 ("There are no guarantees that the [PTO] Director will institute the petition, and the date by which the Director must institute the petition is April 10, 2022, just 9 days before trial is set to begin."). However, the PTO's subsequent decision to grant Accu-Tac's request for reexamination well before the April 10 deadline alleviates some of these concerns.

As a whole, given the advanced stage of the litigation, the Court finds that the first factor weighs against a stay. *See Wonderland Nursery Goods*, 2015 WL 1809309, at *2. However, this factor is not dispositive. *See Oyster Optics, LLC v. Ciena Corp.*, No. 4-17-cv-05920, Dkt. # 243 (slip op.), at *2–3 (N.D. Cal. Nov. 9, 2021).

       *ii.*    *Simplification of the Issues*

The Court next considers whether a stay will simplify the issues in the case. *See Wonderland Nursery Goods*, 2015 WL 1809309, at *2. Particularly when the PTO has granted a request for reexamination of each asserted claim of the patents-in-suit, "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

survive, facilitate trial by providing the court with [the] expert opinion of the PTO and clarifying the scope of the claims." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, No. 12-CV-05501-SI, 2015 WL 435457, at *3 (N.D. Cal. Feb. 2, 2015) (citation omitted); *see also Brass Smith, LLC v. Advanced Design Mfg. LLC*, No. CV 10-4945 PSG (FFMx), 2010 WL 5363808, at *1 (C.D. Cal. Dec. 20, 2010) ("Cancellation of some or all of the claims [through reexamination] would obviously streamline or end the litigation.  Alteration of the claims could change the case in ways that would foster settlement or simplify the case.")

Plaintiffs argue that a stay will not simplify the issues because the reexamination will not address all of the issues remaining in this case and a reexamination resulting in amended claims would not prevent Plaintiffs from maintaining their infringement allegations.  *MTS Opp.* 15:5–16:5.  Defendants counter that a stay will "simplify, if not completely dispose of, the issues for trial" because the PTO found substantial new questions of patentability as to each of the Asserted Claims, Plaintiffs must avoid substantively amending the claims to maintain the possibility of recovering damages, and the proposed estoppel stipulation will streamline issues in this case even if the PTO finds the Asserted Claims patentable without substantive amendment. *MTS Reply* 3:4–5:18.

The Court agrees with Defendants that a stay pending reexamination will likely simplify, or possibly even end, this case for three reasons.  First, in granting Accu-Tac's reexamination request, the PTO found that numerous substantial new questions of patentability exist as to each of the Asserted Claims.  *See PTO Order* ¶¶ 1, 18, 27, 32, 39, 49, 60, 65, 77, 89, 94. Accordingly, a stay could eliminate the need for trial if each of the three Asserted Claims is cancelled during reexamination proceedings.  *See Verinata Health, Inc.*, 2015 WL 435457, at *3; *Brass Smith, LLC*, 2010 WL 5363808, at *1.

Second, even if any of the Asserted Claims is not cancelled, a reexamination resulting in amended claims could eliminate Plaintiffs' ability to recover damages for infringement of those claims.  If an amended claim is not "substantially identical" to the original claim—i.e., because the amendment "makes a substantive change to [the] original claim"—the patent owner is entitled to damages for infringement of the claim only for the period after the reexamination certificate is issued.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1377–78 (Fed. Cir. 2017) (citing 35 U.S.C. §§ 252, 307(b)).  Here, given the Court's determination that Defendants' redesigned bipod products do not infringe the Asserted Claims, there is no ongoing infringement for which Plaintiffs could recover damages after the issuance of the reexamination certificate.  Thus, Plaintiffs will be unable to recover damages for infringement of any Asserted Claims that are substantively amended during reexamination,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|----------|----------------------|------|---------------|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

meaning that reexamination could effectively eliminate some or all of Plaintiffs' infringement claims even without cancelling the Asserted Claims.

Third, if any of the Asserted Claims survives reexamination without being substantively changed, Defendants' proposed estoppel stipulation will likely streamline the issues for trial. Defendants' request for reexamination challenges the patentability of the Asserted Claims, among others, based on prior art not considered during prosecution of the '693 Patent. *See generally* Dkt. # 62-3. Defendants argue that, if the PTO finds the Asserted Claims patentable without substantive amendments, the proposed estoppel stipulation "will have excluded a large body of prior art from the case" because Defendants have agreed to be bound by the PTO's findings. *MTS Reply* 4:25–5:2. The Court agrees. The PTO's review of the prior art relevant to the numerous substantial new questions of patentability regarding each Asserted Claim, *see PTO Order* ¶¶ 18, 27, 32, 39, 49, 60, 65, 77, 89, 94, coupled with Defendants' proposal to be estopped by the PTO's findings, will eliminate the need to address at trial whether any prior art considered by the PTO renders the Asserted Claims unpatentable.

In sum, even if reexamination does not eliminate the need for trial, it will likely simplify the issues remaining for trial. *See Verinata Health, Inc.*, 2015 WL 435457, at *3; *Brass Smith, LLC*, 2010 WL 5363808, at *1. The likelihood of simplification is particularly strong because the PTO has instituted reexamination based on multiple substantial new questions of patentability for each of the Asserted Claims. *See Verinata Health, Inc.*, 2015 WL 435457, at *3. As such, the Court finds that the second factor weighs heavily in favor of a stay pending the outcome of the reexamination. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (finding simplification factor weighed heavily in favor of a stay when the Patent Trial and Appeal Board had "granted CBM review on *all* asserted claims of the *sole* asserted patent" based on two potential grounds of unpatentability, even though not all of the relevant prior art or invalidity issues would be considered in such review).

### iii.    *Undue Prejudice*

The final factor is whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party—here, Plaintiffs. *See Wonderland Nursery Goods*, 2015 WL 1809309 at *2.

Plaintiffs argue that, because the parties are direct competitors, Defendants' ongoing infringement during a stay would unduly prejudice Plaintiffs through loss of market share and reputational harm. *MTS Opp.* 11:22–14:11. To be sure, "infringement among competitors can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

cause harm in the marketplace that is not compensable by readily calculable money damages," and "[s]taying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–CV–02863–EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327–28 (Fed. Cir. 2008)). Here, Plaintiffs' undue prejudice arguments rest on Defendants' alleged ongoing infringement. *See, e.g.*, *MTS Opp.* 12:15–17 ("A multi-year stay in which Defendants are permitted to continue their infringing sales could irreparably harm Plaintiffs . . . [including through] loss of market share.); *id.* 13:2–3 ("Defendants' ongoing infringement during a stay will also lead to loss of goodwill and reputation for Plaintiffs."). But the Court's determination that Defendants' redesigned bipod products do not infringe the Asserted Claims negates Plaintiffs' allegations of ongoing infringement. Thus, the Court is not persuaded that a stay would unduly prejudice Plaintiffs or that any harm caused by a stay could not be adequately compensated by damages. And although Plaintiffs raise concerns about the delay from a stay pending reexamination, *see Opp.* 2:15–6, 11:5–6, 15:1, "[m]ere delay in the litigation does not establish undue prejudice," *Pi-Net Int'l, Inc. v. Hertz Corp.*, No. CV 12-10012 PSG (JEMx), 2013 WL 7158011, at *4 (C.D. Cal. June 5, 2013).

Plaintiffs also argue that a stay would "disproportionately advantage Defendants from a tactical standpoint" because, if the PTO upholds any of the Asserted Claims, Defendants could relitigate issues raised in the reexamination in this case. *MTS Opp.* 14:12–15:2. Plaintiffs fault Defendants for "opt[ing] against any binding or preclusive effect towards the findings in reexam[ination]" by seeking ex parte reexamination—rather than inter partes review—because estoppel applies to inter partes review but not to ex parte reexamination. *Id.* 3:2–11, 14:25–27. Plaintiffs contend that this choice and the timing of Accu-Tac's request for reexamination demonstrate dilatory tactics aimed at gaining a tactical advantage in this litigation. *Id.* 16:22–18:4. But the Court is satisfied that the proposed estoppel stipulation adequately addresses any concerns that Defendants could relitigate issues addressed by the PTO in this case upon conclusion of the stay. Additionally, as Defendants argue, Plaintiffs will have the "opportunity to argue, with a sense of finality, against the prior art in the [ex parte reexamination] without opposition by Defendants," unlike in inter partes review proceedings. *See MTS Reply* 8:11–19. As such, the Court does not find that a stay presents a clear tactical disadvantage to Plaintiffs. And although the parties dispute at which point during discovery Defendants became aware of the grounds for Accu-Tac's reexamination request, *see MTS Opp.* 16:25–17:7; *MTS Reply* 10:9–27, the Court is not convinced that the timing of the request—or Defendants' choice of ex parte reexamination rather than inter partes review—presents evidence of dilatory tactics or an attempt to gain a clear tactical advantage, particularly given Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-532 PSG (KKx) | Date | March 1, 2022 |
|---|---|---|---|
| Title | B-5, Inc. et al v. Accu-Tac, LLC et al | | |

proposed estoppel stipulation.

On balance, although it is possible that Accu-Tac could have brought its reexamination request sooner, Plaintiffs have not shown that a stay will cause them undue prejudice or present a clear tactical advantage for Defendants. As such, the Court finds that the third factor weighs in favor of a stay.

### iv.     Balancing the Factors and the Totality of the Circumstances

In sum, although the stage of the proceedings weighs against a stay, the simplification of the issues weighs heavily in favor of a stay and the lack of undue prejudice weighs in favor of a stay. On balance, these factors thus weigh in favor of a stay. *See Oyster Optics, LLC*, Dkt. # 243 (slip op.), at *2–3 (granting stay despite stage of the proceedings factor weighing against a stay because simplification of the issues factor weighed strongly in favor of a stay and undue prejudice factor weighed in favor of a stay); *Verinata Health, Inc.*, 2015 WL 435457, at *2–5 (same). Moreover, the totality of the circumstances—including the fact that the PTO has granted Accu-Tac's reexamination request as to each Asserted Claim, Defendants' proposed estoppel stipulation, and the Court's rulings on the parties' motions for summary judgment—support a stay. Accordingly, the Court **GRANTS** Defendants' motion to stay pending the outcome of the PTO's ex parte reexamination of the '693 Patent.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Partial Summary Judgment, **DENIES** Plaintiffs' Motion for Summary Judgment of Validity, and **GRANTS** Defendants' Motion to Stay Case Pending Ex Parte Reexamination. The case is administratively closed. Any party may file a motion to reopen the case after the conclusion of the ex parte reexamination.

**IT IS SO ORDERED.**